STATE of Wisconsin, Plaintiff-Respondent,

v.

Leonard C. MATSON, Defendant-Appellant.

Court of Appeals

*No. 03–0251–CR. Submitted on briefs October 14, 2003.—*
*Decided November 26, 2003.*

2003 WI App 253

(Also reported in 674 N.W.2d 51.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael Yovovich*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Alan Lee*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Dykman and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. Leonard C. Matson appeals a judgment of conviction for child abduction and burglary, both as a repeat offender, and from an order denying his motion for postconviction relief. Matson argues that the investigating detective's letter to the sentencing court asking for the maximum sentence undermined the State's sentencing recommendation under the plea agreement. We agree and reverse the judgment and order and remand with directions.

## FACTS

¶ 2. The relevant facts are not in dispute. On September 7, 2001, Matson entered a negotiated plea of guilty to abduction of a child and to burglary, both as a habitual offender, in violation of WIS. STAT. §§ 948.30(1)(a), 943.10(1)(a) and 939.62(1)(c) (2001–02). In exchange for the guilty plea, the State

reduced the severity of the child abduction charge and dismissed a misdemeanor theft charge. In addition, the plea agreement provided that "at the time of sentencing the State and the defense will jointly recommend to the Court a 10–year term of confinement and 15 years of extended supervision on each of the two counts to run concurrent with one another." This joint agreement was later clarified by both the State and defense counsel, with Matson's approval, that the joint recommendation was for ten years' confinement, with ten years of extended supervision on one count and fifteen years' consecutive probation on the second count.

¶ 3. Approximately one month after the plea hearing but prior to sentencing, City of Janesville police detective Martin E. Alstadt wrote a detailed letter to the sentencing judge, on police department stationary. Alstadt was "directly involved in the investigation of this case." Alstadt's five-page letter explained why he disagreed with the plea agreement and ended by stating, "Therefore, despite the joint recommendation for 10 years prison and 15 years probation, I request maximum sentencing on all charges, to ensure the protection of our community." On October 12, 2001, shortly after the letter was provided to the court, the Wisconsin State Journal reported that the lead detective on the case had asked the judge "to throw out a proposed sentencing recommendation and send the defendant to prison for the maximum time."

¶ 4. On October 9, 2001, Matson filed a motion to exclude the letter from the circuit court's sentencing decision. A hearing on this motion was held a month prior to sentencing. At this hearing, Janesville Police Chief George D. Brunner testified he allowed Alstadt to send the letter on police department stationary because

Alstadt had told him and others that the chief judge had approved of sending the letter.

¶ 5. Alstadt testified he had telephoned the chief judge and asked if a citizen could send a letter to a judge in a criminal case. According to Alstadt, the chief judge was "aware" Alstadt intended to send the letter but Alstadt did not inform the chief judge the letter would be sent on police department letterhead. Alstadt did not consult with the district attorney's office about the letter.

¶ 6. A letter from the chief judge was introduced at the hearing. A summary of the letter by the district attorney established that the chief judge had, in fact, talked with Alstadt and "the tenor of the conversation . . . was that [Alstadt] had asked him whether or not a citizen could send a letter in the matter, but never, in fact, identified that he was the citizen that intended to send the letter."

¶ 7. Matson asked the circuit court to disregard the letter and not consider it "in any manner." Matson argued that the letter was, in essence, a breach of the plea agreement. However, Matson did not ask to withdraw his plea but asked only that the letter not be considered for sentencing purposes. The district attorney conceded the letter was a breach of the plea agreement as the letter was "clearly a representation made by a representative of the state". The district attorney did not oppose Matson's motion and agreed that the circuit court should not consider the letter.

¶ 8. The circuit court admitted that it had read the letter but not "seriously." The circuit court had also forwarded the letter to the presentence investigation writer who, in the court's view, was the court's "filter to assess and evaluate what anybody tells the agent, including this letter . . . ." The circuit court noted that it

would consider the letter "insofar as it is given to me through the Department of Corrections." Matson objected to this procedure.

¶ 9. The State and Matson made their joint recommendation at sentencing. The PSI report recommended the maximum sentence on the abduction conviction and five years less than the maximum on the burglary conviction, to be served consecutively. Matson submitted his own presentence memorandum that purported to correct some inaccuracies in the PSI and also discussed Alstadt's letter.

¶ 10. The circuit court asked Matson's attorney if he thought his concerns about the PSI were "sufficiently served by permitting you to furnish the Court with the Sentencing Memorandum you have given me, and then to argue from that?" Matson's trial defense counsel responded "Your Honor, I do, because I have also submitted material in support of the Memorandum . . . and why the Department's Presentence is of no value to the Court in rendering a decision today." Defense counsel argued that the PSI was an attempt "to justify the opinions of somebody else who has already written to the Court and asked the Court for a certain sentence."

¶ 11. After hearing from the parties and the parents of the victim, the circuit court sentenced Matson to the maximum twenty-five year sentence on the abduction charge, with eighteen years and nine months of confinement and six years three months of extended supervision. On the burglary conviction, the court imposed a consecutive fifteen-year probationary term.

¶ 12. Matson filed a postconviction motion, arguing that the circuit court could not insulate itself from the broken plea bargain by filtering the improper information through the presentence writer. Matson

argued that the neutrality of the presentence writer was undermined by the circuit court directing him to consider the improper letter. Matson requested in his postconviction motion resentencing before a different judge with a new presentence report. The circuit court denied Matson's motion. Matson appeals.

## DISCUSSION

■■

¶ 13. Matson argues his due process rights were violated when Alstadt, the investigating detective in this case, gave a sentencing recommendation that undermined the State's recommendation, in effect, breaching the plea agreement. The State counters that Alstadt was not a party to the plea agreement and thus his letter did not violate Matson's due process rights. We agree with Matson that Alstadt's letter constituted a breach of the plea agreement.

¶ 14. The parties do not point to any Wisconsin authority that directly addresses the issue before us, whether a letter to the sentencing court from the investigating officer of a criminal matter asking for a prison sentence greater than that agreed to in the plea bargain constitutes a violation of the plea bargain. We first set out the fundamental principles underlying plea agreements. We next turn to cases in other jurisdictions that have addressed this particular issue. Finally, we draw our own conclusion for the case before us.

■■■

¶ 15. The terms of a plea agreement and the historical facts of the State's conduct that allegedly constitute a breach of a plea agreement are questions of fact. *State v. Howland*, 2003 WI App 104, ¶ 24, 264 Wis. 2d 279, 663 N.W.2d 340. We review the circuit court's

findings of fact under the clearly erroneous standard of review. *Id.* However, whether the State's conduct constitutes a breach of the plea agreement and whether the breach is material and substantial are questions of law. *Id.* We determine questions of law independently of the circuit court. *Id.* The determination of law whether a breach occurred and whether the breach was substantial and material requires a careful examination of the facts. *Id.* at ¶ 27.

¶ 16. An accused has a constitutional right to the enforcement of a negotiated plea agreement. *Id.* at ¶ 25. Consequently, once an accused agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment of the bargain. *Id.* A prosecutor who does not present the negotiated sentencing recommendation to the circuit court breaches the plea agreement. *Id.*

¶ 17. An actionable breach must not be merely a technical breach; it must be a material and substantial breach. *Id.* at ¶ 26. When the breach is material and substantial, an accused may be entitled to resentencing. *Id.* A material and substantial breach is a violation of the terms of the agreement that defeats the benefit for which the accused bargained. *Id.* "End runs" around a plea agreement are prohibited. *Id.* "The State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended." *Id.* (citation omitted). We now examine the cases addressing the issue before us.

¶ 18. The Arizona Supreme Court has held that when a plea agreement refers to the State, the parties

mutually intend to use that term in reference to the prosecutorial branch of the State. Therefore, an investigating officer's report suggesting a lengthy sentence is not a breach of the plea agreement. *State v. Rogel*, 568 P.2d 421, 423 (Ariz. 1977). An investigating officer's recommendation that a Utah defendant be imprisoned was also held to not violate a prosecutor's agreement to recommend probation because "public policy requires a plea agreement reached by a prosecutor not to be binding on other state agencies." *State v. Thurston*, 781 P.2d 1296, 1300 (Utah Ct. App. 1989).

¶ 19. The Montana Supreme Court has held that a plea agreement is not breached when a probation officer recommends a sentence different from that contained in the plea agreement. *State v. Milinovich*, 812 P.2d 338, 340 (Mont. 1991). The *Milinovich* court reasoned that the probation officer's recommendation was part of a statutorily authorized presentence investigation report. *Id.* However, a later dissent in another Montana case concluded that a prosecutor's recommendation is rendered meaningless when another state agent makes a contrary recommendation that the trial court is likely to take more seriously. *State v. Bowley*, 938 P.2d 592, 601 (Mont. 1997) (Trieweiler, J., dissenting). The Washington Supreme Court has also determined that the only parties to a plea agreement are the prosecutor and the defendant; neither an investigating officer nor a community corrections officer is bound by the plea agreement. *State v. Sanchez*, 46 P.3d 774, 775 (Wash. 2002). Nevertheless, two justices strongly disagreed that an investigating law enforcement officer should not be bound by a prosecutor's plea agreement. *See id.* at 783–84 (Chambers, J., concurring in part and dissenting in part, and Madsen, J., dissenting).

¶ 20. . The Florida Supreme Court has determined, however, that a prosecutor's plea bargain binds all state agents. The court addressed whether a promise contained in a plea agreement that the "State" will recommend a given sentence binds only the prosecutor's office or whether it also precludes other state agents, such as law enforcement officers, from making sentencing recommendations contrary to the terms of the agreements. *See Lee v. State,* 501 So.2d 591, 592 (Fla. 1987). In *Lee,* the plea agreement provided that the State would recommend probation but a law enforcement agent's recommendation of incarceration was included in the presentence investigation report. *See Lee,* 501 So.2d at 592–93.

¶ 21. The conclusion in Florida is similar to the position of the federal courts, which have held that absent an express limitation on the government's obligations, a plea agreement entered on behalf of the government by one assistant attorney general binds another assistant attorney general because "[t]he [federal] prosecutor's office is an entity and as such it is the spokesman for the Government." *Giglio v. United States,* 405 U.S. 150, 154 (1972). When determining whether a plea agreement binds the government as a whole or a specific agency, the federal courts "examine what the defendant reasonably understood when the plea was entered." *Allen v. Hadden,* 57 F.3d 1529, 1535 (10th Cir. 1995). Federal courts have held that a plea agreement entered on behalf of the government binds the government as a whole absent an express limitation on the government's obligations. *Id.*

¶ 22. There is no doubt that had the letter in this case been written, or the sentiments contained therein uttered, by the district attorney's office, a breach of the plea agreement would have occurred. The question

before us is whether a letter from the chief investigating officer in this matter, written on police department letterhead and in his capacity as the investigating officer, constitutes a breach of the plea agreement. We conclude that it does. We are persuaded by the reasoning of the Florida Supreme Court in *Lee* and the policy reasons set forth in the Washington Supreme Court dissents in *Sanchez* and we herein adopt them as our own.

¶ 23. Because an investigative officer is the investigating arm of the prosecutor's office, principles of fairness and agency require us to bind the investigating officer to the prosecutor's bargain. When a defendant pleads guilty to a crime, he waives significant rights, including the right to a jury trial, the right to confront his accusers, the right to present witnesses in his defense, the right to remain silent and the right to have the charges against him proved beyond a reasonable doubt. If the guilty plea is part of a plea bargain, the State is obligated to comply with any promises it makes. When a plea rests in any significant degree on a promise or agreement of the prosecutor so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

¶ 24. The cases cited by the State, both from within and outside of Wisconsin, generally deal with probation or parole officers providing statements or sentencing recommendations in the context of a presentence report and are easily distinguishable. A probation or parole officer preparing a presentence report functions as an agent of the court, acting on behalf of an independent judiciary. *State v. McQuay*, 154 Wis. 2d 116, 131, 452 N.W.2d 377 (1990). The preparer of the presentence report is to be a neutral and independent

participant in the sentencing process. *Id. See also Farrar v. State,* 52 Wis. 2d 651, 657–58, 191 N.W.2d 214 (1971). The State relies on *Farrar* as controlling here but we conclude the State's reliance on *Farrar* is misplaced. The issue in *Farrar* was whether a parole agent writing a presentence report was a party to the plea bargain. The court's discussion, as quoted in the State's brief, regarding examples of who is not part of the plea bargain process is dicta. "A dictum is a statement not addressed to the question before the court or necessary for its decision," *American Family Mut. Ins. Co. v. Shannon,* 120 Wis. 2d 560, 565, 356 N.W.2d 175 (1984), and we are not bound by statements that are dicta. *Id.* We determine that the specific question presented here is an issue of first impression in Wisconsin.

¶ 25. Investigating officers are so integral to the prosecutorial effort that to permit one to undercut a plea agreement would, in effect, permit the State to breach its promise. If the prosecutor is obligated to comply with plea bargain promises, then the prosecutor's investigating officers may not undercut those promises by making inconsistent recommendations. We conclude that statements of the investigating officer for purposes of the sentencing hearing are the statements of the prosecutor. A prosecutor may not undercut a plea agreement directly or by words or conduct. Nor may he do so by proxy. "The State may not accomplish by indirect means what it promised not to do directly . . . ." *State v. Williams,* 2002 WI 1, 42, 249 Wis. 2d 492, 637 N.W.2d 733 (citation omitted).

¶ 26. In other contexts, we have imputed the actions of law enforcement to the district attorney's office. In terms of discovery, the State is charged with

knowledge of material and information in the possession and control of others who have participated in the investigation and evaluation of the case. *State v. DeLao*, 2002 WI 49, 24, 252 Wis. 2d 289, 643 N.W.2d 480. Unconstitutional searches and seizures by law enforcement officers can result in suppression of evidence or even dismissal of a prosecutors charges. *See State v. Johnson*, 177 Wis. 2d 224, 231, 501 N.W.2d 876 (Ct. App. 1993), and *State v. Washington*, 120 Wis. 2d 654, 666–67, 358 N.W.2d 304 (Ct. App. 1984). We conclude the same here. The law enforcement officer's letter, written as the chief investigative officer of this criminal matter and on police department letterhead, constituted a breach of the plea agreement.

¶ 27. We acknowledge that circuit courts are not rubber stamps and do not blindly accept or adopt sentencing recommendations from any particular source. *State v. Johnson*, 158 Wis. 2d 458, 465, 463 N.W.2d 352 (Ct. App. 1990). However, it matters not what sentence the circuit court would have imposed in the absence of Alstadt's letter; the letter constituted a material and substantial breach of the plea agreement. Prejudice is presumed and always results from such a manifest injustice. *State v. Smith*, 207 Wis. 2d 258, 281, 558 N.W.2d 379 (1997). Our conclusion precludes any need to consider what the sentencing judge would have done had the breach not occurred. *Id.*

¶ 28. The State counters that Matson has waived any objection to the content of the PSI report by submitting his own sentencing memorandum countering the Department of Correction's PSI. We disagree.

¶ 29. Once aware of Alstadt's letter, Matson immediately filed a motion to exclude the letter from the

circuit court's sentencing decision. At the hearing on this motion, Matson asked the circuit court to disregard the letter and not consider it "in any manner," arguing that the letter was a breach of the plea agreement. The district attorney did not oppose Matson's motion and agreed that the circuit court should not consider the letter.

¶ 30. However, the circuit court declared that it would consider the letter "insofar as it is given to me through the Department of Corrections" and the PSI report. Again, Matson unsuccessfully objected to this procedure. At sentencing, Matson presented his own presentence memorandum and objected to the presentence writer's reliance on the detective's letter in reaching a sentencing recommendation. Matson then filed a postconviction motion arguing that the circuit court could not insulate itself from the broken plea bargain by filtering the improper information through the presentence writer and requesting resentencing before a different judge with a new presentence report. This motion was denied.

¶ 31. The State hinges its waiver argument upon the fact that Matson submitted his own sentencing memorandum and when asked by the circuit court if he (Matson's defense counsel) thought his concerns about the PSI were "sufficiently served by permitting you to furnish the Court with the Sentencing Memorandum you have given me, and then to argue from that?", Matson's trial defense counsel responded "Your Honor, I do, because I have also submitted material in support of the Memorandum . . . and why the Department's Presentence is of no value to the Court in rendering a decision today." Defense counsel further argued that the PSI was an attempt "to justify the opinions of somebody

else who has already written to the Court and asked the Court for a certain sentence."

¶ 32. Matson sufficiently preserved his objections to the letter for appeal.[1] His counsel made numerous unsuccessful objections to the circuit court's decision to consider the letter. Counsel need not object when the point at issue is one on which the court has just ruled adversely. *Schueler v. City of Madison*, 49 Wis. 2d 695, 707, 183 N.W.2d 116 (1971). Matson had already objected to the circuit court's use of the police officer's letter and his objections were unequivocally denied. Further objections would most certainly have proved futile. Submitting the sentencing memorandum was merely a tactical way to contend with the circuit court's decision and cannot be considered waiver of the issue.

## CONCLUSION

¶ 33. Here, as he did before the circuit court, Matson seeks not to withdraw his plea, which is one remedy for a breach of a plea agreement. *Santobello v. New York*, 404 U.S. 257, 263 (1971). Matson instead seeks specific performance, a new sentencing by a different judge with a new presentence report. While the choice of remedy is not up to the defendant, if a

---

[1] The dissent characterizes Matson's appeal on this issue as "sandbagging" the circuit court judge. Reasonable people can disagree reviewing the same information. We are not persuaded that Matson was trying to pull a fast one on the circuit court judge. We are satisfied that Matson made every reasonable effort to preserve his objection to the court's consideration of the detective's letter. In any event, waiver is "a rule of judicial administration which we may, in the proper exercise of our discretion, choose not to employ." *Wisconsin Dep't of Revenue v. Mark*, 168 Wis. 2d 288, 293 n.3, 483 N.W.2d 302 (Ct. App. 1992).

defendant seeks only specific performance, we can simply order resentencing by a different judge. *State v. Howard*, 2001 WI App 137, ¶ 37, 246 Wis. 2d 475, 630 N.W.2d 244. The less extreme remedy of specific performance is always preferred. *Id.*

■■

¶ 34. A new circuit court judge should conduct Matson's resentencing. Furthermore, to avoid any further taint in the case, we also conclude that a new presentence investigation should be conducted, without consideration of detective Alstadt's letter, and a new report completed by an agent from another county. *See Howland*, 264 Wis.2d 279, ¶ 38.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

¶ 35. *DYKMAN, J. (dissenting).* The problem requiring a remand for re-sentencing arose at Matson's sentencing hearing. The trial judge used a format for the hearing in which it outlined the plea agreement, the maximum sentences for the crimes to which Matson pled guilty, and inquired into inaccuracies in the presentence report. After correcting inaccuracies, the court asked the State and Matson: "Is that all a correct summary?" Matson's attorney replied, "That's all correct, your honor . . . ." The court then asked: "Are you asking for any other remedies?" Matson's attorney said, "There are a couple other matters that need to be considered as incorrect." The court heard those matters and disposed of them, noting: "I will consider the corrections that have now been made."

¶ 36. The court next heard from victims, and a witness supporting Matson. Matson's attorney was then given an opportunity to speak. He began by noting that the letter from the Janesville Police Department was, in

his view, an attempt to usurp the job of the district attorney. He was aware that at a previous hearing, the trial judge had concluded that he would use a presentence report which included references to the letter. But he wanted the trial judge to reconsider.

¶ 37. The trial judge asked the dispositive question directly: "[M]y question is, do you believe that your remedies are sufficiently served by permitting you to furnish the Court with the Sentencing Memorandum you have given me, and then to argue from that?"

¶ 38. Matson's attorney had a decision to make. He could answer "no," and reiterate his argument that the only remedy for a breach of the plea agreement was a sentencing before a different judge, using a presentence report which did not mention the offending letter. The parties had previously discussed this letter as an appellate issue, and the trial court might have concluded that the best solution was to do as Matson's attorney requested.

¶ 39. But Matson's attorney answered:

> Your Honor, I do, because I have also submitted material in support of the Memorandum, including a police report from the Janesville Police Department from 1991, which I will address when the opportunity is afforded me, and about what type of sentence it should be, and why the Department's Presentence is of no value to the Court in rendering a decision today.

¶ 40. The choice was clear. Should Matson stand on his belief that the letter was a breach of the plea agreement or should he use the other material he had obtained to show that the letter should be ignored? Matson's attorney made the latter choice.

¶ 41. Waiver is the intentional relinquishment of a known right. *State v. Huebner*, 2000 WI 59, n.2, 235

Wis. 2d 486, 611 N.W.2d 727. The trial court knew this, and at a postconviction motion hearing explained to Matson:

> And at the time of sentencing, I asked Counsel for the defendant, clearly, if there were any remedies that Counsel for the defendant wanted to use with respect to the differences of opinion with the Sentencing Memorandum, and I was told by Counsel that—first, I did hear from both Mr. O'Leary [the district attorney] and from Mr. Hoag [defense counsel], and I obtained the Sentencing Memorandum of Defense Counsel, and I adjusted and made the corrections that were agreed to. Mr. O'Leary had some comments as well that did not adhere to the Sentencing Memorandum of the Defense. Counsel for the Defense told me that those remedies were sufficient. And I find that when you tell a sentencing judge that the remedies are sufficient, that effectively, that is a waiver from at a later date raising the issue that you are raising now.

¶ 42. The practice of agreeing to something in the trial court and then arguing on appeal that a judge's reliance on that agreement was error is called "sandbagging." The problem with sandbagging is that if trial judges are given a choice between decisions, they can consider the law and the facts, and come up with a decision that is often correct, precluding an appeal on that issue. But when a litigant agrees that a trial judge's solution to a problem is acceptable, and then claims error in that solution on appeal, the opportunity for a correct solution to the problem is lost. Appellate courts usually disapprove of that procedure. *State v. Mikkelson*, 2002 WI App 152, ¶ 14, 256 Wis. 2d 132, 647 N.W.2d 421.

¶ 43. I conclude that Matson waived the right to assert now that the trial court erred by refusing to transfer this case to another judge for sentencing with a new presentence report. Therefore, I would not reach that issue. I would affirm. Accordingly, I respectfully dissent.