STATE of Wisconsin, Plaintiff-Respondent,†

v.

London Mack STEWART, Defendant-Appellant.

Court of Appeals

*No. 2012AP1457–CR. Submitted on briefs May 7, 2013.*
*—Decided June 11, 2013.*

2013 WI App 86

(Also reported in 836 N.W.2d 456.)

† Petition to Review denied 11-26-13.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donna Odrzywolski*, Milwaukee.

On behalf of the plaintiff-respondent,the cause was submitted on the brief of *Daniel J. O'Brien*, assistant attorney general, and J.B. Van Hollen attorney general.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. London Mack Stewart appeals from a judgment of conviction entered upon his guilty plea to one count of first-degree reckless injury with use of a dangerous weapon, one count of first-degree recklessly endangering safety with use of a dangerous weapon, and possession of a firearm by a felon, all as a repeater, and from an order denying his postconviction motion. Stewart argues that the State breached the plea agreement when two of the police officers who executed the no-knock search warrant, one of whom Stewart shot during the execution of that warrant, requested that the sentencing court impose the maximum sentence during the sentencing hearing. Because the police officers were speaking as victims and not as agents of the State at the time they requested the maximum sentence, we affirm.

## BACKGROUND

¶ 2. The relevant facts are not in dispute. On June 29, 2010, Stewart pled guilty to first-degree reckless injury with use of a dangerous weapon, first-degree recklessly endangering safety with use of a dangerous

388

weapon, and felony gun possession, all as a repeater, for shooting at Milwaukee Police Officer James A. Jekanoski, injuring him in the arm, and narrowly missing his partner, Milwaukee Police Officer Dennis Justus, while they were executing a search warrant at a residence where Stewart was staying. In exchange, the State dismissed a second felony gun possession count and a count for maintaining a drug house, and recommended a sentence of "25 years globally" for the three offenses, consisting of fifteen years of initial confinement and ten years of extended supervision, consecutive to another sentence Stewart was already serving.

¶ 3. At the sentencing hearing, the prosecutor repeated his agreed-upon recommendation of a global twenty-five-year sentence, and the circuit court received, without objection from Stewart, both oral and written impact statements from both Officers Jekanoski and Justus. Both officers told the court that they wanted Stewart to be sentenced to the maximum time allowable for each count.

¶ 4. The circuit court, noting that it "was struck by the victim impact reports," sentenced Stewart as follows:

- First-degree reckless injury while using a dangerous weapon as a repeat offender (count one): Fifteen years of initial confinement, followed by ten years of extended supervision.

- First-degree recklessly endangering safety while using a dangerous weapon as a repeat offender (count two): Ten years of initial confinement, followed by five years of extended supervision, consecutive to count one.

- Felon in possession of a firearm as a repeat offender (count three): Five years of initial confinement,

389

followed by five years of extended supervision, concurrent with the sentences for counts one and two.

Judgment was entered accordingly.[1]

¶ 5. Appointed counsel for Stewart filed a no-merit report that we rejected. Thereafter, Stewart was given an extension of time to file a postconviction motion, and Stewart was appointed new counsel. Current counsel for Stewart filed a WIS. STAT. § 809.30 (2011–12)[2] motion for postconviction relief, raising the issue presented here—whether the State breached the plea agreement when Officers Jekanoski and Justus asked the court to sentence Stewart to the maximum. The circuit court denied the motion without an evidentiary hearing.[3] Stewart appeals.

## DISCUSSION

¶ 6. Stewart argues that Officers Jekanoski's and Justus's requests that the circuit court impose the maximum sentence amounted to a substantial and material breach of the plea agreement, pursuant to *State v. Matson*, 2003 WI App 253, 268 Wis. 2d 725, 674 N.W.2d 51. As a remedy, Stewart asks that we reverse the circuit court's order denying his postconviction motion and remand this case for specific performance of the parties' agreed-upon plea bargain, namely, a new sentencing hearing, at which the State will recommend a global twenty-five-year sentence before a different

---

[1] The Honorable Patricia D. McMahon presided over Stewart's plea and sentencing hearings and entered the judgment of conviction.

[2] All references to the Wisconsin Statutes are to the 2011–12 version.

[3] The Honorable Charles F. Kahn, Jr., entered the order denying Stewart's postconviction motion.

judge. Because we conclude that this case is distinguishable from *Matson*, we affirm.

¶ 7.  "An accused has a constitutional right to the enforcement of a negotiated plea agreement." *Id.*, ¶ 16. As such, once a defendant pleads guilty in reliance upon the prosecutor's promise, due process requires fulfillment of the bargain. *Id.* "A prosecutor who does not present the negotiated sentencing recommendation to the circuit court breaches the plea agreement." *Id.*

¶ 8.  In order to obtain relief for breach of a plea agreement, Stewart must show that a breach occurred and that it was material and substantial. *See State v. Williams*, 2002 WI 1, ¶ 2, 249 Wis. 2d 492, 637 N.W.2d 733. Because the facts in this case are undisputed, the question of whether a breach occurred and whether it was material and substantial are matters of law that this court reviews *de novo. Id.*, ¶ 5. "A material and substantial breach is a violation of the terms of the agreement that defeats the benefit for which the accused bargained." *Id.*, ¶ 38.

¶ 9.  In *Matson*, Leonard Matson, as part of a negotiated plea agreement, pled guilty to abduction of a child and to burglary, both as a habitual offender. *Id.*, 268 Wis. 2d 725, ¶ 2. In exchange for Matson's pleas, "the State reduced the severity of the child abduction charge and dismissed a misdemeanor theft charge." *Id.* The State and defense counsel, with Matson's approval, agreed to jointly recommend the court impose "ten years' confinement, with ten years of extended supervision on one count and fifteen years' consecutive probation on the second count." *Id.*

¶ 10.  After the plea hearing, but prior to the sentencing hearing, the investigating detective in the

case wrote a five-page letter to the sentencing judge, on police department stationary, explaining why he disagreed with the plea agreement. *Id.*, ¶ 3. He told the court that he "was 'directly involved in the investigation of this case' " and that " 'despite the joint recommendation for 10 years['] prison and 15 years['] probation, I request maximum sentencing on all charges, to ensure the protection of our community.' " *Id.*

¶ 11.   Matson filed a motion to exclude the letter from the circuit court's sentencing decision, arguing that it was a breach of the plea agreement. *Id.*, ¶¶ 4, 7. "The district attorney conceded the letter was a breach of the plea agreement as the letter was 'clearly a representation made by a representative of the state' " and did not oppose Matson's motion. *Id.*, ¶ 7. The circuit court admitted to reading the letter "but not 'seriously.' " *Id.*, ¶ 8. The court forwarded the letter to the presentence investigation writer and noted that it would only "consider the letter 'insofar as it is given to me through the Department of Corrections.' " *Id.*

¶ 12.   At sentencing, the State and Matson made their joint sentencing recommendation. *Id.*, ¶ 9. "The PSI report recommended the maximum sentence on the abduction conviction and five years less than the maximum on the burglary conviction, to be served consecutively." *Id.* The circuit court ultimately imposed "the maximum twenty-five year sentence on the abduction charge, with eighteen years and nine months of confinement and six years three months of extended supervision. On the burglary conviction, the court imposed a consecutive fifteen-year probationary term." *Id.*, ¶ 11.

¶ 13.   "Matson filed a postconviction motion, arguing that the circuit court could not insulate itself from the broken plea bargain by filtering the [detective's]

improper [letter] through the presentence writer." *Id.,* ¶ 12. Matson requested "resentencing before a different judge with a new presentence report. The circuit court denied Matson's motion," and he appealed. *Id.*

¶ 14. On appeal, we agreed with Matson that "[t]he law enforcement officer's letter, written as the chief investigative officer of this criminal matter and on police department letterhead, constituted a breach of the plea agreement." *Id.,* ¶ 26. We held that "[b]ecause an investigative officer is the investigating arm of the prosecutor's office, principles of fairness and agency require us to bind the investigating officer to the prosecutor's bargain." *Id.,* ¶ 23.

¶ 15. Here, however, the police officers were not speaking to the court as investigating officers, but as victims of a crime, which they have a right to do. In Wisconsin, every crime victim has the right "to make a statement to the court at disposition." Wis. Const. art. I, § 9m; *see also* Wis. Stat. § 972.14(3)(a) ("If a victim wants to make a statement, the court shall allow the victim to make a statement in court or to submit a written statement to be read in court."); Wis. Stat. § 950.04(1v)(m) ("Victims of crimes have the following rights: . . . To provide statements concerning sentencing, disposition, or parole[.]"). So important is that right that the legislature has permitted a $1000 forfeiture to be imposed on prosecutors who refuse to allow victims to present statements if they so desire. *See* Wis. Stat. § 950.11. A victim's right to provide a statement at sentencing expressing his or her view as to disposition is to be "honored and protected . . . in a manner no less vigorous than the protections afforded criminal defendants." Wis. Stat. § 950.01. Neither § 950.01 nor the Wisconsin Constitution except police officer crime vic-

tims from the right to provide an impact statement at sentencing. Because the officers here were speaking in their capacity as victims, and not as agents of the State, the State did not breach the plea agreement, and Stewart's constitutional right to the enforcement of the agreement was not violated. Therefore, we affirm the circuit court.

■

¶ 16. We also reject Stewart's argument that the State breached the plea agreement when the prosecutor allegedly "ratifi[ed]" the police officers' requests for the maximum sentence by referring to them in their official capacity as "officer" and by making the following statement: "I like the way Officer Justus puts it. When he . . . submitted his information to the Court, he says, 'There [are] no do-overs.' Everybody who handles a weapon, everybody whoever [sic] fires a weapon knows there [are] no do-overs once you pull the trigger." Stewart argues that, if the police officers were in fact speaking as victims, *State v. Harvey*, 2006 WI App 26, 289 Wis. 2d 222, 710 N.W.2d 482, required the prosecutor to expressly disavow the police officers' requests for the circuit court to impose the maximum sentence. That is simply not the case.

■■

¶ 17. Plea agreements, like the one here, "in which a prosecutor agrees to cap his or her sentencing recommendation," do not prevent a prosecutor "from supplying information that supports a harsher sentence than the one recommended by the prosecutor." *See State v. Liukonen*, 2004 WI App 157, ¶ 10, 276 Wis. 2d 64, 686 N.W.2d 689. A prosecutor can still inform the circuit court of aggravating sentencing factors, including facts concerning the defendant's character and behavioral patterns. *Id.*

¶ 18.   That is what the prosecutor did here. It was within the bounds of the plea agreement for the prosecutor to refer to the victims as police officers because they were police officers and they were acting in that capacity when Stewart chose to fire his gun in their direction. That is an aggravating factor the court could properly consider when framing its sentence. And the prosecutor's reference to Officer Justus's statement that " '[t]here [are] no do-overs,' " was not a "ratification" of Officer Justus's sentencing recommendation. It merely reinforced an aggravating factor:   that Stewart knew he could hurt someone when he fired his gun. *See id.* The prosecutor's comments in that regard were within the bounds of the plea agreement.

¶ 19.   Furthermore, *Harvey* does not stand for the proposition that a prosecutor must disavow a victim's sentencing recommendations when they differ from the plea agreement. In *Harvey*, we concluded that the terms of the plea agreement permitted the prosecutor to set forth the facts of the crime to which Harvey had pled. *Id.*, 289 Wis. 2d 222, ¶ 40. We also noted that the circuit court did not err by permitting the victim and the victim's family members an opportunity to make a statement. *Id.*, ¶ 42. While "[w]e commend[ed] the State for its prompt and strenuous disavowal" of the victim's sister's sentencing request for the maximum sentence, we did not *require* the State to make such a disavowal. *See id.*, ¶¶ 36, 44. Nor do we impose such a requirement now.

¶ 20.   Finally, we address Stewart's complaint that his trial counsel was ineffective for failing to object to the State's alleged breach of the plea agreement. To establish a claim of ineffective assistance, Stewart must show that counsel's performance was deficient and that the deficiency was prejudicial. *See Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). However, because the State did not breach the agreement, Stewart's counsel could not have performed deficiently by failing to object to the officers' statements. *See State v. Bowers*, 2005 WI App 72, ¶ 20, 280 Wis. 2d 534, 696 N.W.2d 255. Consequently, his ineffective assistance of counsel claim fails.

¶ 21.   In sum, for all of the reasons set forth above, we affirm.

*By the Court.*—Judgment and order affirmed.