COURT OF APPEALS
DECISION
DATED AND FILED

February 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP214-CR**

Cir. Ct. No.  2017CF90

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

STACEY-TERRILL BROADWAY,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Door County: D. T. EHLERS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Stacey-Terrill Broadway appeals a judgment convicting him of two counts of second-degree sexual assault of a child; one count

of exposing a child to harmful descriptions; and three counts of felony bail jumping. Broadway argues the circuit court erroneously exercised its discretion by allowing the State to introduce at trial explicit images that the victim allegedly emailed to Broadway. Specifically, Broadway contends the court erred by failing to consider whether the probative value of those images was substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03 (2017-18).[1]

¶2 In response, the State asserts that Broadway forfeited his argument regarding the images' admissibility by agreeing at trial that the State could publish the images to the jury. The State also contends that, even though the circuit court improperly failed to conduct the balancing analysis set forth in WIS. STAT. § 904.03, the record demonstrates that the images were properly admitted. Finally, the State argues that even if the court erred by admitting the images, the error was harmless.

¶3 We reject the State's forfeiture argument. We agree with both parties that the circuit court should have conducted the balancing analysis required by WIS. STAT. § 904.03 when deciding whether to admit the images. However, upon our independent review of the record, we conclude that the images' probative value was not substantially outweighed by the danger of unfair prejudice. As such, the court did not err by allowing the State to introduce the images at Broadway's trial. We therefore affirm.[2]

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Because we conclude the images were properly admitted, we need not address the State's alternative argument that the admission of the images was harmless error. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

## BACKGROUND

¶4    On February 19, 2017, Denise[3] reported to police that she believed her ex-boyfriend, Broadway, had been having inappropriate sexual contact with her thirteen-year-old daughter, Victoria.  Denise stated that a few months earlier, Victoria told Denise that she had been having sex with Broadway.  Denise claimed she did not report the assaults to police earlier because Broadway had blackmailed her and told her that she would go to prison if she did so.  Denise also told police that while Broadway was living in her home, it was a normal occurrence for him to sleep with Victoria in Victoria's bedroom.  Denise's sister then showed police text messages she had allegedly received from Broadway, in which he appeared to state that he had fallen in love with Victoria and seemed to admit having sex with her.

¶5    An officer then interviewed Victoria alone in her bedroom.  The officer told Victoria that based on the text messages he had seen, he believed Victoria was having a sexual relationship with Broadway.  According to the officer, Victoria then nodded her head in agreement.  Victoria subsequently told the officer that she and Broadway had penis-to-vagina intercourse twice, and the last time was in the fall of 2016.  She characterized the intercourse as consensual, however, and denied that Broadway had raped her.

¶6    During an interview conducted later the same day by another police officer, Victoria similarly stated that she had sex with Broadway twice in October 2016.  However, Victoria subsequently recanted her allegations during an

---

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use pseudonyms when referring to the victim and her mother.

interview in March 2017. In that interview, Victoria claimed for the first time that Denise had forced her to tell police that she had had sex with Broadway.

¶7    The State ultimately filed an amended criminal complaint charging Broadway with ten counts: two counts of second-degree sexual assault of a child; one count of exposing a child to harmful descriptions; and seven counts of felony bail jumping. The case proceeded to a jury trial in May 2018.

¶8    Before trial, Broadway filed a motion in limine seeking to prevent the State from introducing a video that Victoria allegedly sent to Broadway, which depicted a female masturbating. The video showed only the female's genitalia and did not show her face. Broadway asserted that the video constituted other acts evidence and was inadmissible under the three-step analysis set forth in *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

¶9    At a motion hearing the following day, the State asserted that the video in question was sent to Broadway from Victoria's email account on September 4, 2016—about one month before the alleged assaults. The State further contended that the video was shot by and depicted Victoria. The State also disclosed that it intended to introduce similar still images at trial of a female masturbating that Victoria had allegedly emailed to Broadway. The State asserted that regardless of whether the video and images actually depicted Victoria, they were "probative of the nature of the sexual relationship between" Victoria and Broadway. In response, Broadway argued that "even though there may be some probative value" to the video and images, "the probative value doesn't outweigh the … unfair prejudice."

¶10    At the conclusion of the motion hearing, the circuit court denied Broadway's motion to exclude the video and images "at this point." The court first stated that the video and images were relevant to show the sexual nature of the

relationship between Victoria and Broadway, "especially when we have a circumstance that the alleged victim has now recanted her original statement and her … relationship with the defendant is clearly at issue in this matter." The court then stated that the evidence in question was not other acts evidence, and the court therefore did not need to "get into the weighing that [defense counsel] talks about in terms of the probative value outweighing the relevance." The court asserted that although that determination would be required under a *Sullivan* analysis, the court did not need to perform a *Sullivan* analysis because the evidence in question was not other acts evidence.

¶11     Thereafter, on the first day of trial, Broadway asked the circuit court to prohibit the State from playing the video for the jury and to instead have a witness narrate the video's contents. The court denied that request, stating: "I'll give the State the opportunity to prove or to show the video to the jury. I appreciate the fact it's prejudicial to Mr. Broadway, but it is what it is, and I believe the State has the right to show that video." The court then granted Broadway a standing objection to the introduction of the video and "any photographs of sexual activity that … [Victoria] was alleged to have sent" to Broadway.

¶12     At trial, Victoria testified that she did not have sex with Broadway, and she initially reported that she had sex with him because Denise told her to do so. She further testified that she was afraid of Denise at the time she reported the assaults and that Denise "would threaten to beat [her]." During her trial testimony, Denise admitted punching Victoria on one occasion. She denied, however, that she had threatened to harm Victoria if Victoria did not tell police she had sex with Broadway.

5

¶13 Given Victoria's recantation, the State relied heavily on text messages sent between Victoria's and Broadway's phone numbers and emails sent between their email addresses to show that they had a sexual relationship. Victoria claimed to have no memory of sending or receiving those messages. Elsewhere in her trial testimony, however, she acknowledged she had previously told an interviewer that the messages were part of a "game" that she and Broadway were playing because they knew Denise was checking Victoria's phone. Victoria claimed they were curious why Denise, after seeing the explicit messages on Victoria's phone, did not contact the police or take some other action in response to the messages.

¶14 Ultimately, the State did not play the video at trial that was the subject of Broadway's motion in limine. Instead, on the fourth and final day of trial, the State "came up with a different plan" to present that evidence to the jury. Specifically, the State proposed that it would distribute a folder to each juror containing a screen shot of the first frame of the video, along with three other images of a woman masturbating that were emailed to Broadway from Victoria's email address. The prosecutor proposed that the jurors could look at the images in the folder during an officer's testimony about how police obtained the images, but they could also choose not to look. The circuit court invited comment from Broadway's attorney regarding that procedure, and counsel responded, "I've got no concerns with that." The court then stated, "Well, that sounds like a great solution." Folders containing the relevant images were subsequently provided to the jurors in accordance with the State's proposal.

¶15 The jury convicted Broadway of both sexual assault counts, the exposing a child to harmful descriptions count, and three counts of felony bail

jumping.[4] Broadway now appeals, arguing the circuit court erred by permitting the State to introduce the explicit images that were emailed to him from Victoria's account.

## DISCUSSION

### I. Forfeiture

¶16 The State contends that Broadway forfeited his argument regarding the images' admissibility. Under the forfeiture rule, a specific, contemporaneous objection is required to preserve a claim of error for appeal. *State v. Delgado*, 2002 WI App 38, ¶12, 250 Wis. 2d 689, 641 N.W.2d 490. "The purpose of the forfeiture rule is to enable the circuit court to avoid or correct any error as it comes up, with minimal disruption of the judicial process and maximum efficiency." *State v. Counihan*, 2020 WI 12, ¶26, 390 Wis. 2d 172, 938 N.W.2d 530. Whether an objection adequately preserved an issue for appeal is a question of law that we review independently. *State v. Kutz*, 2003 WI App 205, ¶27, 267 Wis. 2d 531, 671 N.W.2d 660.

¶17 Here, the State concedes that Broadway filed a motion in limine seeking to exclude the video, which the circuit court denied, and that the court later granted Broadway a standing objection to the video and to any other images of sexual activity that Victoria was alleged to have sent to Broadway. The State argues, however, that when it subsequently proposed giving each juror a folder containing those images and a still photograph from the video, Broadway's attorney consented

---

[4] The four other felony bail jumping charges were dismissed on the State's motion on the first day of trial.

to that procedure and did not voice any objection to it. The State contends that by doing so, counsel forfeited any objection to the images' admissibility.

¶18 We disagree. As Broadway aptly notes in his reply brief, the State's forfeiture argument confuses the admissibility of the images with the proposed method of publishing them to the jury. The circuit court twice ruled—over Broadway's objections—that the images were admissible. Following those rulings, and after the court had granted Broadway a standing objection to the images, the State proposed a specific method for the jury to view them. When Broadway's attorney stated he had "no concerns with" the State's proposal, he was clearly conveying that he did not object to the State's proposed method of publishing the images to the jury, not that he was withdrawing his prior objections to their admissibility. Having already lodged two unsuccessful objections, Broadway's attorney was not required to assert another objection to the images' admissibility— which would "most certainly have proved futile"—when the State later proposed a specific method of publishing the images to the jury. *See State v. Matson*, 2003 WI App 253, ¶32, 268 Wis. 2d 725, 674 N.W.2d 51. We therefore reject the State's forfeiture argument and address the merits of Broadway's appeal.

## II. Admissibility of the images

¶19 Circuit courts have broad discretion in making evidentiary rulings, and we review their decisions to admit or exclude evidence using the erroneous exercise of discretion standard of review. *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. Under that standard, we will uphold a circuit court's evidentiary ruling as long as the court examined the relevant facts, applied a proper legal standard, and used a demonstrated rational process to reach a reasonable conclusion. *Id.* If, however, the court failed to adequately explain its

reasoning, we will independently review the record to determine whether there is "any reasonable basis" for the court's discretionary decision. *State v. Payano*, 2009 WI 86, ¶92, 320 Wis. 2d 348, 768 N.W.2d 832 (citation omitted).

¶20 Relevant evidence is generally admissible, *see* WIS. STAT. § 904.02, and Broadway concedes that the images at issue in this appeal were relevant. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice." WIS. STAT. § 904.03.

¶21 The circuit court concluded it did not need to conduct the balancing test set forth in WIS. STAT. § 904.03 because the images were not other acts evidence. The parties agree—and we concur—that the court properly concluded the images were not other acts evidence. Nevertheless, we agree with both Broadway and the State that the court erred by failing to conduct the balancing test set forth in § 904.03. It is true that other acts evidence must satisfy that balancing test. *See Sullivan*, 216 Wis. 2d at 772-73. By its plain language, however, the statute requires *all* evidence to satisfy the balancing test, not just other acts evidence. *See State v. Davidson*, 2000 WI 91, ¶34, 236 Wis. 2d 537, 613 N.W.2d 606 (noting that "all evidence" is subject to the balancing test set forth in § 904.03).

¶22 Although the circuit court did not employ the correct analysis, upon our independent review of the record, we nevertheless conclude there is a reasonable basis for the court's discretionary decision to admit the images. *See Payano*, 320 Wis. 2d 348, ¶92. Specifically, the record demonstrates that the images' probative value was not substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03.

¶23 "[P]robative value reflects the evidence's degree of relevance. Evidence that is highly relevant has great probative value, whereas evidence that is

only slightly relevant has low probative value." *Payano*, 320 Wis. 2d 348, ¶81. Unfair prejudice, in turn, "is not based on simple harm to the opposing party's case, but rather 'whether the evidence tends to influence the outcome of the case by improper means.'" *State v. Hurley*, 2015 WI 35, ¶87, 361 Wis. 2d 529, 861 N.W.2d 174 (citation omitted). For instance, unfair prejudice results if the evidence "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *Sullivan*, 216 Wis. 2d at 789-90.

¶24    "The balancing test of the probative value and danger of unfair prejudice favors admissibility." *State v. Linton*, 2010 WI App 129, ¶26, 329 Wis. 2d 687, 791 N.W.2d 222. Again, under the balancing test, evidence "will be admitted unless the opponent of the evidence can show that the probative value of the evidence is *substantially* outweighed by unfair prejudice." *State v. Speer*, 176 Wis. 2d 1101, 1115, 501 N.W.2d 429 (1993). "The term 'substantially' indicates that if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted." *Id.* The balancing test is therefore biased toward admissibility, and close cases should be resolved in favor of admission. *State v. Marinez*, 2011 WI 12, ¶41, 331 Wis. 2d 568, 797 N.W.2d 399.

¶25    Applying these principles to the instant case, we conclude the circuit court did not err by admitting the images in question because their probative value was not substantially outweighed by the danger of unfair prejudice. The images' probative value was high. Although Victoria initially told police that she had sex with Broadway on two occasions, she later recanted those allegations and testified at trial that they did not have a sexual relationship. Thus, for the State to prove its case, it needed to introduce other evidence showing that their relationship was, in fact, sexual. The explicit images sent from Victoria's email account to Broadway

strongly suggested that they had a sexual relationship and, as such, were highly probative.[5]

¶26    As the circuit court correctly acknowledged, the images were prejudicial to Broadway.  Mere prejudice, however, is insufficient to justify the exclusion of relevant evidence, as "[n]early all of the State's evidence is prejudicial to the defendant in some way."  *State v. Alexander*, 214 Wis. 2d 628, 642, 571 N.W.2d 662 (1997).  "To be excludable, the evidence must be *unfairly* prejudicial."  *Id.* (emphasis added).  Moreover, the danger of unfair prejudice must *substantially outweigh* the evidence's probative value.  *See* WIS. STAT. § 904.03.

¶27    That was not the case here.  Broadway argues, "It is hard to imagine anything more prejudicial than multiple images of what was purported to be a 13-year-old girl's vagina as she masturbates."  He contends that "[v]iewing an intimate sexual act of a child is inherently disturbing," and it will therefore necessarily appeal to the jury's sympathies, arouse its sense of horror, and provoke its instinct to punish.  Broadway further argues that the jurors will "resent" being exposed to child pornography and will "want to take it out on the only person they can, the defendant."

¶28    We do not find Broadway's arguments persuasive.  The evidence at trial clearly showed that the images were sent to Broadway from Victoria's email account.  There was no evidence indicating that Broadway asked the victim to send

---

[5] The parties dispute whether the images depict Victoria.  That dispute, however, is not material to our analysis.  The images are graphic depictions of a female masturbating.  The images are therefore probative because the jury could reasonably infer that regardless of whether the person depicted was Victoria or someone else, Victoria would not have sent Broadway—her mother's boyfriend—such sexually explicit images unless she and Broadway had a sexual relationship.  In any event, the identity of the person depicted in the images was ultimately an issue for the jury to resolve.

him such images, thus lessening the possibility that the jury would blame Broadway for the creation or transmission of the images or attempt to punish him for simply receiving or possessing them.

¶29 Furthermore, while it is true that viewing the images might be disturbing for the jurors, the State lessened the danger of unfair prejudice through its manner of presenting the images to the jury. Namely, instead of playing the video for the jurors, the State captured a still image from the video and placed copies of that image into folders, which also contained the other explicit images Broadway received. The State then gave each juror a folder and allowed the jurors to choose for themselves whether to view the images. This procedure lessened the likelihood that the jurors would find Broadway guilty simply because they were so disturbed by the images and video. Moreover, while Broadway argues the jurors would likely resent being exposed to the images and therefore "take it out on the only person they can, the defendant," he ignores the fact that it was the State that presented the images to the jury. Thus, if the jurors resented being exposed to the images, they could just as easily have taken that resentment out on the State. Under these circumstances, we cannot conclude the images' probative value was *substantially* outweighed by the danger of unfair prejudice.

¶30 Broadway argues it was not necessary for the State to present the actual images to the jury, and the State could have made the same point by having a witness describe the images' content. "Photographs should be admitted if they will help the jury gain a better understanding of material facts; they should be excluded if they are not 'substantially necessary' to show material facts and will tend to create sympathy or indignation or direct the jury's attention to improper considerations." *State v. Williams*, 2015 WI 75, ¶84, 364 Wis. 2d 126, 867 N.W.2d 736 (citation omitted).

¶31    We agree with the State that, in this case, actual viewing of the images was substantially necessary to establish a material fact—specifically, the sexual nature of Victoria and Broadway's relationship.  The graphic images of a female masturbating, which were sent to Broadway from Victoria's email account, could reasonably be construed as an invitation to sex and gave rise to a strong and powerful inference that Victoria and Broadway had a sexual relationship.  The power of that inference was substantially stronger as a result of the jury viewing the images than it would have been had the jury merely heard a witness describing them.  Stated differently, descriptions of the images would not have sufficiently communicated the sexual nature of the message that the images conveyed.  It was therefore substantially necessary for the State to present the actual images, as opposed to mere descriptions.  Accordingly, we reject Broadway's argument that the circuit court erred by admitting the images because the State could have presented descriptions instead.

¶32    Finally, Broadway asserts that in prior cases, courts have determined that photographs of "gruesome injuries" were admissible "either because the injury was an element of the offense … or [because] the photos aided in understanding the physical mechanics of the crime." *See State v. Lindvig*, 205 Wis. 2d 100, 108, 555 N.W.2d 197 (Ct. App. 1996) (holding that photographs of an arrow piercing the victim's leg were admissible where bodily harm was an element of the charged offense); *State v. Sarinske*, 91 Wis. 2d 14, 41-42, 280 N.W.2d 725 (1979) (holding that photographs of the victim's corpse were admissible to help the jury understand the facts of the case and determine the angle of the fatal shotgun blast), *overruled on other grounds by State v. Wayerski*, 2019 WI 11, 385 Wis. 2d 344, 922 N.W.2d 468.  Broadway contends neither of those justifications for the admission of photographs is present here.

¶33 Broadway cites no authority, however, supporting the proposition that photographs are *only* admissible under the circumstances present in *Lindvig* and *Sarinske*. Instead, the proper test is whether the photographs in question are "substantially necessary" to show material facts and whether they "will tend to create sympathy or indignation or direct the jury's attention to improper considerations." *Williams*, 364 Wis. 2d 126, ¶84 (citation omitted). As explained above, the images at issue in this case were substantially necessary to establish the sexual nature of the relationship between Broadway and Victoria. And, for the reasons we have already discussed, the images' probative value was not substantially outweighed by the danger of unfair prejudice. As such, the circuit court did not err by allowing the State to introduce the images at Broadway's trial.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.