COURT OF APPEALS
DECISION
DATED AND FILED

July 5, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1782**

STATE OF WISCONSIN

Cir. Ct. No. 1993CF934585A

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KAMAU KAMBUI BENTLEY, JR.,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County:
MICHELLE ACKERMAN HAVAS, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1   PER CURIAM. Kamau Bentley, Jr., appeals the circuit court's order denying his postconviction motion brought pursuant to WIS. STAT. § 974.06 (2021-22).[1]  Bentley argues:  (1) that he should be allowed to withdraw his plea because the circuit court did not comply with WIS. STAT. § 971.08 and *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986); (2) that the State breached the plea agreement; and (3) that he received constitutionally ineffective assistance of postconviction counsel.  We affirm.

¶2   In 1993, Bentley pled guilty to one count of felony murder, as a party to a crime, in the shooting death of Lenard Boyd, and he pled guilty to one count of first-degree intentional homicide, as a party to a crime, in the shooting death of Curtis Brown.  Bentley filed a postconviction motion to withdraw his pleas on the grounds that Bentley's trial counsel gave him incorrect information before he entered the pleas.  The circuit court denied the motion.  On appeal, we reversed.  The Supreme Court then reversed our order.  *See State v. Bentley*, 201 Wis. 2d 303, 306, 548 N.W.2d 50 (1996).  On March 9, 2021, Bentley filed the action currently before us collaterally attacking his conviction.

¶3   Bentley argues that he should be allowed to withdraw his plea because the circuit court's plea colloquy did not comply with WIS. STAT. § 971.08

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

and ***Bangert***, 131 Wis. 2d at 246.  He contends that the circuit court did not explain the meaning of party-to-a-crime liability, did not explain the meaning of "intent" with regard to the first-degree intentional homicide charge, and did not adequately inquire about his level of education and his ability to comprehend the proceedings.

¶4      ***Bangert*** made it mandatory for the circuit court to ascertain the defendant's understanding of the nature of charge against him or her during the plea hearing by following one or a combination of several methods.  ***Id.***, 131 Wis. 2d at 267-68.  One of the enumerated methods is for the circuit court to "summarize the elements of the crime charged by reading from the appropriate jury instructions … or from the applicable statute." ***Id.*** at 268.

¶5      The circuit court complied with this duty by asking the prosecutor to explain the elements of the charges.[2]  The prosecutor did so by referring to applicable statutes.  The prosecutor listed the elements of the crimes, including the elements of party-to-a-crime liability and the intent element of first-degree intentional homicide.  As the prosecutor read the elements of the crimes, the circuit court questioned Bentley about his understanding of the elements as applied to the crimes he was charged with, asked Bentley repeatedly whether he

---

[2] The circuit court judge was apparently having some difficulty with his voice because he stated:  "And I'd ask, Ms. Kraft, could you just briefly outline the elements?  Of felony murder?  Of the two crimes just to save my voice."

had any questions, and ascertained that Bentley could read and write. Therefore, the plea hearing transcript contradicts Bentley's assertion that the plea hearing colloquy was inadequate and establishes that there was no violation of ***Bangert*** or WIS. STAT. 971.08 during the plea colloquy.[3]

¶6      Bentley next argues that the State breached the plea agreement. A criminal defendant has a due process right to have the prosecutor fulfill the terms of a plea agreement. ***State v. Matson***, 2003 WI App 253, ¶16, 268 Wis. 2d 725, 674 N.W.2d 51. Bentley contends that the State agreed to make no recommendation with regard to his parole eligibility date for his first-degree intentional homicide conviction, which carried a mandatory life sentence. Bentley argues that the prosecutor violated this agreement by asking the circuit court at sentencing to set his parole eligibility at forty-five years.

¶7      The record does not support Bentley's contention that the State breached the plea agreement. The prosecutor did not agree to make no recommendation with regard to Bentley's parole eligibility with regard to his first-degree intentional homicide conviction. We agree with the following detailed analysis of the circuit court rejecting this argument.

---

[3] Although Bentley does not directly state that his argument is premised on the fact that the *prosecutor* read the elements of the crimes aloud, as opposed to the circuit court, this argument would be unavailing. The circuit court was actively engaged in discussion with Bentley about the elements of the crimes as they were being listed, allowing it to ascertain whether Bentley understood the crimes to which he was pleading guilty.

At the plea hearing, the State indicated that [it] would be recommending "that the defendant receive concurrent sentences on the two … charges. He will be exposed to 40 years for [felony murder] and life imprisonment with the Court setting the parole eligibility date [for first-degree intentional homicide]. And I indicated to [trial counsel] *I would indicate to our sentencing committee that Mr. Bentley be given consideration by us in our representations by virtue of the fact that he [pled] guilty and is taking responsibility, although I also made it clear to him I could not generate a parole eligibility recommendation.*"

At sentencing, the State recommended "that Mr. Bentley be sentenced to life in prison as the court must sentence him [for first-degree intentional homicide], that the court set a parole eligibility date for Mr. Bentley at 45 years, and that the court sentence Mr. Bentley to a concurrent time of 25 year[s] on the Boyd homicide." The defendant argues that the State violated its agreement to make no parole eligibility recommendation….

The State responds that the defendant has misconstrued the State's recommendation: "Defendant's claim that the '[S]tate agreed to remain silent on the parole eligibility recommendation' is not supported by the March 28, 1994 offer letter or the State's statements at the plea hearing. *In neither the letter nor in court did the State inform the court that it would 'remain silent on the parole eligibility recommendation.'"* The State explains that "[t]he clear language of that [offer] letter is that the State would not, prior to conviction, negotiate a parole eligibility recommendation, but that after conviction, a committe[e] would meet to determine the appropriate recommendation. That is exactly what occurred." The State indicates that ADA Kraft was describing the defendant's maximum exposure on both counts when she referred to the Court "setting the parole eligibility date."

*The March 28, 1994 offer letter from ADA Kraft to [trial counsel] explained, "With respect to sentencing, you are aware that I cannot negotiate the parole eligibility recommendation relative to the 1st Degree Intentional Homicide charge. You are also aware that it is the policy of our office that after conviction, a sentencing committee meets to determine the appropriate recommendation."* The letter makes clear that ADA Kraft was not herself authorized to negotiate a parole eligibility recommendation due to office policy. Rather, her offer involved urging the DA's office's sentencing committee to take into

consideration that the defendant admitted to being a party to the crime, but was not the shooter …[] that he was taking responsibility for his participation in these offenses, and that he was pleading guilty and sparing the families the ordeal of a jury trial. Accordingly, it is apparent that the plea agreement was not for ADA Kraft to remain silent about parole eligibility, but that she would urge her office's "sentencing committee" to take into consideration the defendant's acceptance of responsibility in determining the appropriate recommendation from their office. [Emphasis added; record citations omitted].

¶8 Finally, Bentley argues that he received ineffective assistance of postconviction counsel because his lawyer should have raised the two issues addressed above in Bentley's first postconviction motion after he was convicted. "[A] defendant who alleges … that his postconviction counsel was ineffective for failing to bring certain viable claims must demonstrate that the claims he wishes to bring are clearly stronger than the claims postconviction counsel actually brought." *State v. Romero-Georgana*, 2014 WI 83, ¶4, 360 Wis. 2d 522, 849 N.W.2d 668. We have concluded above that these issues lack merit and we therefore conclude that these issues are not clearly stronger than the claims originally brought. Postconviction counsel did not render constitutionally ineffective assistance of counsel by failing to raise issues without merit. *See State v. Golden*, 185 Wis. 2d 763, 771, 519 N.W.2d 659 (Ct. App. 1994) (providing that counsel did not render ineffective assistance by failing to raise a meritless argument). Therefore, we reject Bentley's claim that he received ineffective assistance of postconviction counsel.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.