STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard L. BOWERS, Defendant-Appellant.†

Court of Appeals

*No. 04–1093–CR. Submitted on briefs February 3, 2005.—
Decided March 9, 2005.*

2005 WI App 72

(Also reported in 696 N.W.2d 255.)

† Petition to review denied 6-1-2005.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *George M. Tauscheck*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Shunette T. Campbell*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J. Richard L. Bowers appeals from a judgment of conviction for operating while intoxicated (5th+) (OWI) contrary to Wis. Stat. § 346.63(1)(a) (2003–04)[1] and an order denying his postconviction motion for resentencing. In the context of an ineffective assistance of counsel claim, he contends that the State breached the plea agreement at the sentencing hearing by both misstating the amount of time to be served on initial confinement and recommending that his sentence run consecutively. We conclude that because the misstatement was insubstantial, inadvertent and promptly recognized and rectified, it

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

does not constitute an actionable breach of the plea agreement. We also hold that because the plea agreement is silent on the issue of consecutive or concurrent sentences and the record does not reflect that Bowers otherwise bargained for the State's promise not to recommend consecutive sentences, the State's recommendation of consecutive sentences did not constitute a breach of the plea agreement. We affirm.

## BACKGROUND

¶ 2.  On December 27, 2002, the State filed a complaint against Bowers alleging operating a motor vehicle with a prohibited alcohol concentration and operating while intoxicated ($5^{th}+$). Pursuant to a plea agreement, Bowers pled no contest to the operating a motor vehicle while intoxicated charge and the other counts subject to the agreement were dismissed. The "Plea Questionnaire/Waiver of Rights" form was signed by Bowers and stated:

> No promises have been made to me other than those contained in the plea agreement. The plea agreement will be stated in court or is as follows:
>
> Plea [no contest] to OWI 6th. BAC & OAR Dismissed. State to recommend 2 yrs initial confinement; 3 yrs extended supervision. Δ free to argue. Sentencing adjourned.

The parties recited the plea agreement to the court at the plea hearing held on May 19, 2003. As both parties acknowledge, there was no mention either in court or on the plea questionnaire as to whether the recommended sentence would run concurrent or consecutive to any other sentence.

¶ 3.  The sentencing hearing was held on July 30. The State began its sentencing argument by incorrectly

recommending two and one-half years of initial confinement to be followed by two and one-half years of extended supervision. The State also recommended that the sentence run consecutive to the sentence that Bowers had begun serving in another case. After the State completed its sentencing recommendations, defense counsel, at Bowers urging, asked to look at the plea questionnaire form in the court file. Bowers had indicated to his counsel that the State may have misstated the terms of the plea agreement. Upon hearing this, the State immediately amended its recommendation to "two years in and three years out." After hearing the parties' recommendations, the court determined that Bowers should receive three years' initial incarceration and two years' extended supervision. The court specifically quoted the correct sentence recommendation from the State:

> In all honesty, I think there's a very good argument here for the maximum which would be the 45 months confinement. I'm taking into consideration the State's recommendation for two years and the Presentence recommendation for two and a half. I'm not going to give the full 45 months, but I'm going to give 36.

> I think anything less than three years would unduly depreciate the seriousness of what occurred here with regard to a sixth offense, would not take into consideration Mr. Bowers' rehabilitative needs, which are significant, and would certainly not adequately address protecting the public.

¶ 4. Bowers filed a motion for resentencing. He argued that when the State incorrectly recommended two and one-half years' imprisonment and two and one-half years' extended supervision, it materially and substantially breached the plea agreement and his counsel's failure to object to the breach constituted

ineffective assistance of counsel. At the postconviction motion hearing, the court determined that the State's misstatement was not a material and substantial breach of the plea agreement. For the first time, Bowers also argued that the State breached the plea agreement by recommending a consecutive sentence. The court rejected Bowers' argument, concluding that if a plea agreement does not address the issue of consecutive and concurrent sentencing, then the prosecutor is free to make a recommendation either way. The court issued an order denying his postconviction motion. Bowers now appeals from the judgment of conviction and the order denying his postconviction motion. He seeks resentencing before a different judge.

## STANDARD OF REVIEW

¶ 5. The question of whether the State's conduct breached the terms of the plea agreement is a question of law that we review de novo. *State v. Howard*, 2001 WI App 137, ¶ 15, 246 Wis. 2d 475, 630 N.W.2d 244, *review denied*, 2003 WI 126, 265 Wis. 2d 418, 668 N.W.2d 558 (No. 02–1677–CR). Additionally, a trial court's ineffective assistance of counsel analysis involves mixed questions of law and fact. *Id.*, ¶ 23. The trial court's factual findings will not be reversed unless they are clearly erroneous; however, issues bearing on whether trial counsel's conduct was deficient and prejudicial are questions of law that this court reviews de novo. *Id.*, ¶ 23.

## DISCUSSION

¶ 6. When Bowers failed to object to the State's alleged breaches at the sentencing hearing, he waived his right to directly challenge the alleged breaches of

the plea agreement. *See id.*, ¶ 12. Therefore, this case comes to us in the context of an ineffective assistance of counsel claim. Following a brief recitation of the fundamental principles of plea agreements, we will consider whether the State materially and substantially breached the plea agreement when it misstated the length of incarceration and when it recommended consecutive sentences. If there were material and substantial breaches, the next issues are whether Bower's counsel provided ineffective assistance and which remedy is appropriate. *See id.*

## *Fundamental Principles of Plea Agreements*

¶ 7. A criminal defendant has a constitutional right to the enforcement of a negotiated plea agreement. *State v. Smith*, 207 Wis. 2d 258, 271, 558 N.W.2d 379 (1997). Due process concerns arise in the process of enforcing a plea agreement. *Id.* "Although a defendant has no right to call upon the prosecution to perform while the agreement is wholly executory, once the defendant has given up his [or her] bargaining chip by pleading guilty, due process requires that the defendant's expectations be fulfilled." *Id.*; *see also Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

¶ 8. When examining a defendant's allegation that the State breached a plea agreement, such as by making a different recommendation at sentencing, it is irrelevant whether the trial court was influenced by the

541

State's alleged breach or chose to ignore the State's recommendation. *See United States v. Clark*, 55 F.3d 9, 13 (1st Cir. 1995) (A prosecutorial failure to fulfill a promise is not rendered harmless because of judicial refusal to follow the recommendation or judicial awareness of the impropriety.). Thus, the focus of the trial court's analysis for postconviction motions, and for this court on appeal, is whether the State breached the agreement and, if so, whether the breach was material and substantial, rather than whether the trial court was influenced by the breach. *Howard*, 246 Wis. 2d 475, ¶ 14.

¶ 9. Not all breaches of a plea agreement require a remedy. *See State v. Bangert*, 131 Wis. 2d 246, 289, 389 N.W.2d 12 (1986). A defendant is not entitled to relief when the breach is merely a technical one rather than a substantial and material breach of the agreement. *See id.* at 289–90. A material and substantial breach of a plea agreement is one that violates the terms of the agreement and deprives the defendant of a material and substantial benefit for which he or she bargained. *State v. Deilke*, 2004 WI 104, ¶ 14, 274 Wis. 2d 595, 682 N.W.2d 945. However, even an oblique variance will entitle the defendant to a remedy if it "taints" the sentencing hearing by implying to the court that the defendant deserves more punishment than was bargained for. *State v. Knox*, 213 Wis. 2d 318, 321, 570 N.W.2d 599 (Ct. App. 1997) (citing *State v. Poole*, 131 Wis. 2d 359, 394 N.W.2d 909 (Ct. App. 1986)). Because a plea agreement is analogous to a contract, we do draw upon contract principles in determining the rights of the parties to a plea agreement and whether there has been a breach that is material and substantial. *Deilke*, 274 Wis. 2d 595, ¶ 12.

## State's Misstatement of the
## Terms of the Plea Agreement

■

¶ 10. Bowers contends that the State breached the plea agreement at sentencing when the prosecutor recommended two and one-half years' initial incarceration and two and one-half years' extended supervision instead of the agreed upon two years' initial incarceration and three years' extended supervision. He maintains that "[t]he State's simple recitation of the correct recommendation, without more, after the defense had already begun its sentencing argument qualifies as too little, too late." We agree with the State that the first of its perceived breaches in this case was not material and substantial.

¶ 11. This case is akin to *Knox*, where we held that an "inadvertent and insubstantial" misstatement of the plea agreement, which was promptly rectified, did not constitute a breach. *Knox*, 213 Wis. 2d at 320. The misstatement in *Knox* was the prosecutor's request for consecutive, rather than concurrent, sentences. *Id.* at 320–21. The plea agreement had required the prosecutor to recommend concurrent sentences. *Id.* at 320. Immediately realizing the error, the prosecutor advised the court of the mistake regarding the agreement and recommended the bargained-for concurrent sentence. *Id.* at 320–21. The court rejected the recommendation and imposed consecutive prison terms. *Id.* at 321. On appeal, the State conceded that the misstated recommendation was material, but denied it was substantial. *Id.* at 321 n.2; *but see Deilke*, 274 Wis. 2d 595, ¶ 12 n.8 ("'Material and substantial,' though it appears to have two parts, is actually a single concept."). We agreed, recognizing that the perceived breach was "not in-

tended to affect the substance of the agreement by sending a veiled message to the sentencing court that greater punishment than provided for in the plea agreement was warranted." *Knox*, 213 Wis. 2d at 322. "Rather," we said:

> the deviation from the original terms drew a prompt objection and was shown to be the result of a mistake that was quickly acknowledged and rectified. Indeed, the prosecutor's earnest manner in advocating the corrected proposed disposition, commented upon by the trial court, further circumstantially belies an implication of improper motive. For these reasons, the momentary and inadvertent misstatement of the parties' agreement did not constitute an actionable breach.

*Id.* at 322–23.

¶ 12.  We reach the same conclusion here. While the State did not correct itself with tremendous enthusiasm and zeal and while the trial court did not reflect upon the State's "earnest" advocacy of the proper sentence, such is not required for us to find a perceived breach immaterial and insubstantial. There is no requirement that the state correct a misstated sentence recommendation forcefully or enthusiastically. *Knox* teaches us that it is sufficient for the State to promptly acknowledge the mistake of fact and to rectify the error without impairing the integrity of the sentencing process. *See id.*; *see also State v. Williams*, 2002 WI 1, ¶ 51 n.47, 249 Wis. 2d 492, 637 N.W.2d 733 ("In *Knox*, the breach was not actionable because the prosecutor misstated a term of the plea agreement but promptly acknowledged the mistake of fact and rectified the error without impairing the integrity of the sentencing process.").

¶ 13.  In the present case, when the mistake was brought to its attention, the State promptly and matter-

544

of-factly corrected its recommendation to the agreed upon bifurcated sentence and, in its sentencing remarks, the trial court recognized that the State was recommending "two years" of initial incarceration as part of the plea agreement. The perceived breach was not an attempt to qualify or undercut the substance of the plea agreement; rather, it was simply an inadvertent misstatement that was acknowledged and rectified shortly thereafter. We therefore hold that the State did not materially and substantially breach the plea agreement when it misspoke as to the length of initial incarceration. There being no material and substantial breach of the agreement, counsel could not be said to have performed deficiently.

*State's Recommendation of Consecutive Sentences*

■

¶ 14.   Bowers maintains that because the plea agreement was silent on the question of whether his sentence should run concurrently or consecutively, the State breached the plea agreement by recommending a consecutive sentence. He argues that the State's "recommendation of a consecutive sentence is akin to adding a material term to the agreement in the absence of negotiations between the parties. The length of time to be served, which is affected by whether the sentence runs concurrent or consecutive, is perhaps the most material issue in a plea agreement." According to Bowers, the parties knew at the time of the plea agreement that Bowers would be serving a sentence in a separate revocation case. The State responds simply that because the plea agreement contained no provision requiring it to either remain silent on the issue or recommend concurrent sentences, it was free to recommend consecutive sentences. We agree with the State.

545

¶ 15. As explained, a material and substantial breach of a plea agreement is one that violates the terms of the agreement and defeats a benefit for the nonbreaching party. *Deilke*, 274 Wis. 2d 595, ¶ 14. The plea agreement in this case required the State to recommend two years' initial confinement and three years' extended supervision and to dismiss the "BAC & OAR" charges in exchange for Bowers' guilty plea. The State honored its commitments—after briefly misstating the terms of the agreement, it recommended that the court sentence Bowers to "two years in and three years out" and dismiss the other charges against Bowers. The State made no other guarantees about its conduct in the plea document, as Bowers himself acknowledged when he agreed to the instrument's clause that states, "[n]o promises have been made to me other than those contained in the plea agreement."[2] Thus, when the State recommended consecutive sentences, it did not violate the express terms of the agreement and Bowers was not denied his due process right to have the full benefit of the plea bargain upon which he relied.

¶ 16. We recognize that the issue of concurrent and consecutive sentences is "extremely important" to a guilty plea. *See Howard*, 246 Wis. 2d 475, ¶ 18. However, in the absence of any indication that the parties expected the State to either remain silent or recommend concurrent sentences, we are reluctant to engraft these conditions into a fully integrated plea agreement. The interpretation of plea agreements is rooted in contract law, *see Deilke*, 274 Wis. 2d 595, ¶ 12, and basic contract law dictates that we recognize the parties' limitation of their assent. Contract law demands

---

[2] Bowers does not argue that he had negotiated with the State for a recommendation of concurrent sentences.

that each party should receive the benefit of its bargain; no party is obligated to provide more than is specified in the agreement itself. *See United States v. Peglera*, 33 F.3d 412, 413 (4th Cir. 1994); *United States v. Fentress*, 792 F.2d 461, 464 (4th Cir. 1986) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 210, 216 (1981) for the proposition that "[a]s a fully integrated [plea] agreement, the described exchange may not be supplemented with unmentioned terms"). Accordingly, the State should be held only to those promises it actually made to the defendant. As the Fourth Circuit explained in *Fentress*, "While the government must be held to the promises it made, it will not be bound to those it did not make. To do otherwise is to strip the bargaining process itself of meaning and content." *Fentress*, 792 F.2d at 464–65.

¶ 17. We are unable to find any published Wisconsin cases directly addressing the question the parties present—that being, whether the State breaches a plea agreement when the plea agreement and parties' negotiations do not consider the issue of concurrent or consecutive sentences and the State proceeds to recommend consecutive sentences to the sentencing court.[3]

---

[3] This case must be distinguished from *State v. Howard*, 2001 WI App 137, ¶ 19, 246 Wis. 2d 475, 630 N.W.2d 244, *review denied*, 2003 WI 126, 265 Wis. 2d 418, 668 N.W.2d 558 (No. 02–1677–CR), in which we held that "where a plea agreement undisputedly indicates that a recommendation is to be for concurrent sentences, an undisputed recommendation of consecutive sentences that is not corrected at the sentencing hearing constitutes a material and substantial breach of the plea agreement as a matter of law." Both parties in that case agreed that the State violated the plea agreement when it made its recommendation. *Id.*, ¶ 16. At issue was whether the violation was "technical" or "substantial and material." *Id.* Here, the issue, as we see it, is whether the State actually breaches a plea agreement when it makes no commitment in the plea agree-

We do, however, find one case that lends some support to our position, *State v. Zanelli*, 212 Wis. 2d 358, 569 N.W.2d 301 (Ct. App. 1997).

ment or during the negotiations process either to recommend concurrent sentences or to remain silent on the question.

This case must also be distinguished from *State v. Deilke*, 2004 WI 104, ¶ 19, ¶ 19 n.17, 274 Wis. 2d 595, 682 N.W.2d 945, in which our supreme court wrote: "[I]n decisions that have reviewed the contention that a plea agreement has been breached, the conduct that was held to be a breach never was explicitly mentioned as an act a party to the agreement was constrained from taking." (citing for support in paragraphs 14, 19 and footnote 17 of the opinion, *Howard*, 246 Wis. 2d 475, ¶¶ 16–17; *State v. Matson*, 2003 WI App 253, 268 Wis. 2d 725, 674 N.W.2d 51; *State v. Williams*, 2002 WI 1, 249 Wis. 2d 492, 637 N.W.2d 733; *State v. Robinson*, 2002 WI 9, ¶¶ 3, 6, 249 Wis. 2d 553, 638 N.W.2d 564). The court's statement cannot be read as broadly granting courts permission to read into a plea bargain any unarticulated and unnegotiated term. *See Deilke*, 274 Wis. 2d 595, ¶ 19 n.17. In *Deilke* and the cases it cited to support its proposition, the court was concerned about either the defendant undermining a benefit the State had bargained for by challenging one of the convictions underlying the agreed upon sentence or the State's violation of an undisputed term of the agreement. *See id.*, ¶ 22 (holding that the defendant's collateral attack prevented the State from receiving all it bargained for when it dismissed multiple charges in exchange for one OWI conviction which had, at its core, repeater consequences designed to remove drunk drivers from Wisconsin highways); *Robinson*, 249 Wis. 2d 553, ¶¶ 3, 6 (concluding that an accused breached his plea agreement when he successfully challenged a plea to and conviction on one count of a two-count information on grounds of double jeopardy and the information had been amended pursuant to a negotiated plea agreement by which the State made charging concessions and the defendant's exposure had been reduced); *Howard*, 246 Wis. 2d 475, ¶ 19 (state promised to recommend concurrent sentences, but recommended consecutive at sentencing); *Matson*, 268 Wis. 2d 725, ¶¶ 23, 25 (holding that because the statements of an investi-

¶ 18. There, the defendant argued that the State's prosecution of a WIS. STAT. ch. 980 petition for civil commitment violated a plea agreement in an earlier criminal prosecution. *Zanelli*, 212 Wis. 2d at 367. Prior to his plea in the criminal matter, the State had agreed to certain limits to its sentencing arguments in exchange for the defendant's guilty pleas. *Id.* We rejected the defendant's analysis and held that the State did not breach its plea agreement by filing the ch. 980 petition. *Id.* at 367–68. We explained, in part, that the parties' plea agreement was silent regarding future ch. 980 proceedings; thus, the record did not reflect that the defendant had bargained for the State's promise to forego a future ch. 980 proceeding.[4] *See Zanelli*, 212 Wis. 2d at 367–68. This analytical framework applies with equal force to this case. Here, the agreement was silent regarding the issue of concurrent and consecutive sentences; thus, the record does not reflect that Bowers bargained for the State's promise to refrain from asking

gating officer are, for purposes of the sentencing hearing, the statements of the prosecutor, the officer's letter to the court recommending that the sentence be longer than was agreed to in the plea bargain was a material and substantial breach of the plea bargain); *Williams*, 249 Wis. 2d 492, ¶¶ 42–51 (holding that the State's "less than neutral presentation" of the plea bargain violated the terms of the plea agreement because it implicitly conveyed to the sentencing court that a more severe sentence was warranted than that the State agreed to recommend).

[4] We recognize that our holding was also premised on the fact that WIS. STAT. ch. 980 petitions are merely a "collateral consequence" of guilty pleas and the defendant was not entitled to relief in the form of a plea withdrawal as a result. *See State v. Zanelli*, 212 Wis. 2d 358, 367–68, 569 N.W.2d 301 (Ct. App. 1997). We do not view this alternate rationale as precluding the application of the case in its entirety.

for consecutive sentences. Therefore, when the State recommended consecutive sentences, it did not violate the plea agreement. *See id.* at 368.

¶ 19. We also note that when faced with similar fact patterns, courts in other jurisdictions have reached the same conclusion as we do here. *See Fentress*, 792 F.2d at 464–65 (holding that the prosecution did not breach a plea agreement by asking the court to order restitution and consecutive sentences, where the agreement did not mention either restitution or consecutive sentences and the government otherwise kept its promises on the proposed length of imprisonment); *White v. United States*, 308 F.3d 927, 929 (8th Cir. 2002) (concluding that the government did not breach a plea agreement by recommending that the defendant's new sentence should run consecutive to his probation revocation sentence because the plea agreement contained no provision for the sentences to be served concurrently); *Doles v. State*, 55 P.3d 29, 34 (Wyo. 2002) (determining that because there was no agreement that the sentence was to be concurrent, and the terms of the agreement did not establish that the prosecutor was required to refrain from asking for a consecutive sentence, it was permissible for the prosecutor to argue for a consecutive sentence). *See also, United States v. Mooney*, 654 F.2d 482, 485–86 (7th Cir. 1981) (holding that the government did not violate the terms of the plea agreement when it opposed a Rule 35 motion to reduce a sentence imposed in excess of that recommended where the plea agreement did not contain an explicit promise to refrain from opposing such a motion and there was no indication that the parties expected the government not to oppose a Rule 35 motion).

¶ 20. Given that the plea agreement contained no provision for the OWI sentence to be imposed so as to be

served concurrently with the sentence in the revocation case, the State's recommendation on the matter during the sentencing hearing was not a breach of the agreement. Because the State did not breach the agreement, Bowers' counsel did not perform deficiently by failing to object to the State's recommendation.

## CONCLUSION

¶ 21.   In summary, we conclude that the State did not materially and substantially breach the plea agreement by recommending two and one-half years' initial incarceration and two and one-half years' extended supervision because it promptly acknowledged and rectified its misstatement. We further hold that because the plea agreement did not contemplate the State's recommendation as to whether the probation revocation sentence and the OWI sentence would run concurrent or consecutive to each other, the State did not breach the plea agreement by recommending consecutive sentences. There being no breach of the plea agreement, counsel could not have been ineffective. The sentence is affirmed.

*By the Court.*—Judgment and order affirmed.

¶ 22. BROWN, J. (*concurring in part, dissenting in part*).   This case in my view actually starts long before Richard Bowers was arrested for driving while intoxicated, as a sixth offense, on December 25, 2002. On October 1, 2001, Bowers had his sentence for OWI-fifth offense withheld, and he was placed on probation for five years with various conditions, including a year in jail. He blew his probation chance when he was picked up on Christmas morning in 2002. From that point on, he was in jail on a probation hold. We know from the record that Bowers' prior counsel was engaged in dis-

cussions with the State whereby some alternative to revocation could be had. Obviously, those discussions did not prove fruitful to Bowers because on May 5, 2003, his probation was revoked. So, it is very clear to me that by the May 19 change-of-plea hearing, Bowers knew that he faced prison time for OWI-5th as well as the distinct probability of prison time for the OWI-6th.

¶ 23. So what does the plea agreement say about consecutive versus concurrent sentences? Nothing. Not a word. From this, the majority uses a maxim of contract law to declare that while the State must be held to the promises it made, it will not be bound to those it did not make.

¶ 24. I come to a different conclusion. With the very real prospect of spending time in prison as a result of his probation revocation looming on the horizon, Bowers agreed to change his plea in return for a specific recommendation by the State on his most recent violation. The State would *recommend* two years of initial confinement with three years extended supervision, and the defense would be free to argue. That is all. It was, on its face, an unambiguous recommendation by the State.

¶ 25. So what did the State do here? In open court, it voiced a recommendation beyond what it had agreed to recommend. It voiced to the trial court a *further recommendation* that the sentence be served consecutively to the probation revocation. In my mind, the State went beyond what it had agreed to recommend. The State's *real* recommendation was that Bowers do two years in confinement *after* serving the two and one-half years ordered by the circuit court in the OWI-5th case. I am satisfied that this voicing of an additional recommendation was a breach of the plea

agreement. I am also satisfied that Bowers' trial counsel was ineffective for failing to object.

¶ 26.  Much is made in the majority opinion of our case law explaining how we draw upon contract law in resolving plea bargain issues. But a major tenet of contract law is that the mutuality of assent underlies an enforceable contract. In plea bargaining terms, there must be a promissory exchange and the promise of certain benefits, including the exact penal promises, in return for a defendant's promise to enter a guilty or no contest plea. If we allow the State to bargain for a recommendation of a specific sentence and then let the State unilaterally recommend a consecutive sentence over and above the sentence recommendation mutually assented to, we are permitting the State to change the rules of the game.[1]

---

[1] The majority cites three cases from foreign jurisdictions in support of its decision. I recognize the existence of these decisions, but point out that they are the only three published cases on this subject. So, what the State has done here is not a regular recurring event either in Wisconsin or elsewhere. I guess I am stating the obvious, therefore, by noting that three cases hardly translates into a general consensus. And, as to those three cases, I am not impressed by the *ipse dixit* rationale of two of these opinions or the reductive reasoning of the third, *United States v. Fentress*, 792 F.2d 461 (4th Cir. 1986). Rather, I find more persuasive the supreme court's language in *State v. Deilke*, 2004 WI 104, ¶ 19 n.17, 274 Wis. 2d 595, 682 N.W.2d 945, which stated, "[B]reaches of provisions that were not explicitly stated in plea agreements have been held to be material and substantial breaches." *See also id.*, ¶ 19. I agree with the majority that the court's statement "cannot be read as broadly granting courts permission to read into a plea bargain any unarticulated and unnegotiated term," *see* majority op., ¶ 17 n.3, but that observation is largely beside the point. The clear import of the supreme court's language was to unequivo-

¶ 27.   It is my opinion that Bowers was entitled to a clear understanding of exactly how the State's promise would affect him. If it were up to me, the State would not be able to recommend consecutive terms unless bargained for. While I would see nothing wrong with the State alerting the trial court that it should address whether the sentence is to be served consecutively or concurrently with another sentence, I see everything wrong with allowing the State to *recommend* consecutive terms without having bargained for it.

cally reject the notion that all terms not expressly articulated are also unnegotiated. I do not see how the majority can say the defendant has not negotiated a term as basic as, "when do I get out of prison," when the parties have agreed on the specific sentence to be recommended. The majority dismisses *Deilke* and the cases it cites as relevant only where the State has violated an *undisputed* term of the contract or the *defendant* undermines "a benefit *the State* had bargained for by challenging one of the convictions underlying the agreed upon sentence." Majority op., ¶ 17 n.3 (emphasis added). I do not understand why there can be a breach when the defendant undermines an unexpressed benefit the State expected but not vice versa.

And I must profess complete surprise that the majority uses *State v. Zanelli*, 212 Wis. 2d 358, 569 N.W.2d 301 (Ct. App. 1997), to support its holding. In *Zanelli*, we held that the State was not foreclosed from filing a petition for a civil commitment as Zanelli's prison term was nearing its end just because it had agreed in a plea bargain to a sentencing cap recommendation for the underlying crime. As the plethora of Wis. Stat. ch. 980 cases attest, ch. 980 commitments are civil commitments and are not penal in character. The plea bargain in *Zanelli* went to penal limitations and the later ch. 980 petition was outside any penal consideration. Thus, *Zanelli* is far different from this case where the recommendation for a consecutive sentence was undeniably focused on Bowers' penal exposure. *Zanelli* is completely off point.

¶ 28.  I would reverse the sentence and remand for a new sentencing where the State would be held to the terms of its bargain.

¶ 29.  I dissent in part. I concur with the majority's answer to the other argument raised by Bowers regarding the State's initial misstatement of the agreed upon bargain.