COURT OF APPEALS
DECISION
DATED AND FILED

July 14, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2019AP1448-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2017CF494

**IN COURT OF APPEALS
DISTRICT III**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

DESMOND MYERS LAPEAN,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for St. Croix County:  ERIC J. LUNDELL and SCOTT J. NORDSTRAND, Judges. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1      STARK, P.J.   Desmond LaPean appeals a judgment convicting him of repeated sexual assault of a child and an order denying his postconviction motion for resentencing.  LaPean argues the State materially and substantially breached the

plea agreement during his sentencing hearing by twice recommending a sentence that exceeded the recommendation it had agreed to make. LaPean further argues that his trial attorney was constitutionally ineffective by failing to object to the State's second breach of the plea agreement and by failing to inform LaPean that one of the available remedies for the State's breaches was resentencing before a different judge.

¶2      We agree with LaPean that the State materially and substantially breached the plea agreement. As such, LaPean's trial attorney performed deficiently by failing to object to the State's second breach and by failing to inform LaPean that resentencing was an available remedy. We further conclude LaPean has demonstrated that he was prejudiced by his trial attorney's deficient performance in failing to inform him that he could seek resentencing by a different judge as a remedy for the State's material and substantial breaches of the plea agreement. Accordingly, we reverse LaPean's judgment of conviction and the order denying postconviction relief, and we remand for LaPean to be resentenced by a different judge.

## BACKGROUND

¶3      In September 2017, the State filed a criminal complaint charging LaPean with one count of first-degree sexual assault of a child under age twelve and one count of repeated sexual assault of a child. The complaint alleged that between September 1, 2013, and September 1, 2014, LaPean—who was then sixteen or seventeen years old—sexually assaulted a four- or five-year-old girl on at least three occasions.

¶4      The parties ultimately entered into a plea agreement, under which LaPean agreed to plead no contest to the repeated sexual assault of a child charge.

The maximum sentence for that charge was sixty years' imprisonment, comprised of forty years' initial confinement and twenty years' extended supervision. In exchange for LaPean's plea, the State agreed to move to dismiss the first-degree sexual assault charge, as well as additional charges in one other case and a traffic citation. The State also agreed to cap its sentence recommendation at ten years' initial confinement and ten years' extended supervision.

¶5     The circuit court[1] accepted LaPean's no-contest plea at a plea hearing on February 5, 2018. A presentence investigation report (PSI) was later prepared, and the author recommended that the court impose a sentence consisting of nine to thirteen years' initial confinement and seven to ten years' extended supervision. The defense submitted an alternative PSI, which recommended that the court withhold sentence and place LaPean on probation for seven to ten years, with six to twelve months' conditional jail time.

¶6     LaPean's sentencing hearing took place on July 9, 2018—just over five months after he entered his plea. During its sentencing argument, the State read a letter from the victim, discussed the gravity of the offense, emphasized LaPean's failure to take responsibility for his actions, and repeatedly called LaPean a "monster." The victim's mother also addressed the court during the State's sentencing argument, emphasizing the emotional trauma the victim continued to suffer as a result of the assaults and asking the court to impose "the maximum" sentence.

---

[1] The Honorable Eric J. Lundell presided over LaPean's plea and sentencing hearings, while the Honorable Scott J. Nordstrand presided over the postconviction proceedings.

¶7       When the time came for the State to make its sentence recommendation, the following exchange occurred:

> [THE STATE]:  The gravity of offense is high.  The need to not unduly depreciate what happened here I think warrants a high prison time.  The state recommends to this court 24 years fashioned as 12 years initial confinement—
>
> [DEFENSE COUNSEL]: Objection, your Honor, this is a violation of the plea agreement which capped the State's recommendation at 10 years.
>
> THE COURT:  I don't know either way, so.
>
> [DEFENSE COUNSEL]:  The record will be clear from the plea hearing.

¶8       The State then continued its sentencing argument as follows:

> Ten years—I am sorry.  Ten years initial confinement, 14 years of extended supervision.  And I think that the court needs to sentence Desmond LaPean to that high amount because to do so [sic] anything less would unduly depreciate the seriousness of the crime, the gravity of the offense, and need to protect the public.
>
> This is not a young man who I believe has learned from the errors of his ways.  I think that he has a community that's going to insulate and continue to protect him and not have the degree of accountability to say what you did was wrong and you need help.  He is going to get that with sex offender treatment, right.  But he also needs a lengthy period of incarceration not only for himself, but [for] other victims and [for the victim in this case].
>
> This girl needs to grow up and be older to feel confident in her security and her safety and not realize that Desmond is going to get out within six to twelve months.  He's a danger to our society.  He just is.
>
> He is a sex offender.  He is going to be labeled as such.  And this court is going to put provisions that keeps [sic] him accountable on the extended supervision part of it.  But with regards to the initial confinement I ask this court to sentence him to the ten years because it is needed.  Desmond is a threat.  He is a danger and he is a monster.  Thank you.

Notably, after defense counsel objected that the State's recommendation of a twenty-four-year sentence (including twelve years' initial confinement) had breached the plea agreement, the State again breached the plea agreement by recommending that the circuit court sentence LaPean to twenty-four years in the Wisconsin Prison System, consisting of ten years' initial confinement and fourteen years' extended supervision. Defense counsel did not object to the State's second breach of the plea agreement.

¶9 After the State concluded its remarks, defense counsel presented his sentencing argument. During that argument, defense counsel elicited testimony from the author of the defense PSI. Following that testimony, defense counsel concluded his sentencing argument by asking the court to "hand down a sentence that will protect rather than please the public." Defense counsel did not make a specific sentence recommendation.

¶10 LaPean then exercised his right of allocution. However, immediately after he began speaking, the State requested a side bar. When the proceedings resumed on the record, the prosecutor stated, "Judge, due to the plea agreement that we had entered into, the state does agree to cap its recommendation at 20 years fashioned as 10 years initial confinement and 10 years extended supervision. I apologize to the court that I misstated our agreement." LaPean then completed his allocution, after which the circuit court imposed a twenty-two-year sentence, consisting of twelve years' initial confinement and ten years' extended supervision.

¶11 LaPean filed a postconviction motion seeking resentencing before a different judge. LaPean argued the State had "materially and substantially breached the plea agreement … when it twice asked the Court to impose a sentence of 24 years of prison." LaPean further argued that his trial attorney was constitutionally

ineffective by failing to object to the State's second breach and by failing to inform LaPean that he could seek resentencing before a different judge as a remedy for the State's breaches.[2] The State filed a response opposing LaPean's postconviction motion, asserting that its breaches of the plea agreement were not material and substantial. As such, the State argued LaPean's trial attorney did not perform deficiently either by failing to object or by failing to inform LaPean that resentencing was an available remedy.

¶12 The circuit court held a *Machner*[3] hearing, during which LaPean's trial attorney testified that the plea agreement required the State to cap its sentencing recommendation at ten years' initial confinement and ten years' extended supervision. He further testified that, at sentencing, he objected when the State recommended a twenty-four-year prison sentence including twelve years' initial confinement because that recommendation was a material and substantial breach of the plea agreement. Defense counsel conceded that he did not notice the State's subsequent request for ten years' initial confinement and fourteen years' extended supervision, that he did not have a reason for failing to object to that request, and that he did not discuss his decision not to object with LaPean.

¶13 Defense counsel further testified that at some point during the sentencing hearing, the circuit court gave him the opportunity to confer with LaPean about the State's breach of the plea agreement. Counsel testified that during that discussion, LaPean "immediately and eagerly asked [him] whether that breach of the plea agreement would be grounds for a resentence hearing in front of a new

---

[2] LaPean's postconviction motion also alleged that he was denied his due process right to be sentenced by an impartial judge. LaPean does not renew that claim on appeal, and we therefore do not address it further.

[3] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[j]udge." Counsel testified that based on his understanding of the law, he informed LaPean that the only remedy available to him was plea withdrawal. Counsel stated he was unaware that LaPean could have requested resentencing before a different judge as a remedy for the State's breaches.

¶14    LaPean also testified at the *Machner* hearing. He asserted he was not aware at the time of sentencing that he could have requested resentencing before a different judge due to the State's breaches of the plea agreement. He further testified that, had he been aware of that option, he would have pursued it.

¶15    The circuit court ultimately issued a written decision and order denying LaPean's postconviction motion for resentencing. The court concluded the prosecutor did not materially and substantially breach the plea agreement because she ultimately corrected her erroneous recommendations. Because there was no material and substantial breach, the court further concluded that LaPean's trial attorney was not ineffective by failing to object or by failing to give LaPean accurate advice about the available remedies. LaPean now appeals.

## DISCUSSION

¶16    On appeal, LaPean renews his argument that the State materially and substantially breached the plea agreement by twice recommending a sentence longer than the ten years of initial confinement and ten years of extended supervision that it had agreed to recommend. While LaPean's attorney objected to the State's first breach of the plea agreement, he did not object to the State's second breach. Accordingly, LaPean forfeited his right to directly challenge the State's second breach on appeal. *See State v. Howard*, 2001 WI App 137, ¶12, 246 Wis. 2d 475, 630 N.W.2d 244. LaPean's challenge to that breach therefore falls under the ineffective assistance of counsel rubric. *See id.* LaPean also argues his trial attorney

7

was ineffective by failing to advise him that he could seek resentencing before a different judge as a result of the State's breaches.

¶17     Before addressing LaPean's ineffective assistance claims, however, we must first determine whether there was, in fact, a material and substantial breach of the plea agreement.  *See State v. Naydihor*, 2004 WI 43, ¶9, 270 Wis. 2d 585, 678 N.W.2d 220.  If no such breach existed, then LaPean's trial attorney did not perform deficiently by failing to object or by failing to advise LaPean of the available remedies for the breach.  *See id.*

¶18     When reviewing a defendant's claim for relief based on an alleged breach of a plea agreement, we review "the circuit court's determination of historical facts, such as the terms of the plea agreement and the State's conduct that allegedly constitutes a breach, under the clearly erroneous standard of review." *State v. Williams*, 2002 WI 1, ¶20, 249 Wis. 2d 492, 637 N.W.2d 733.  Whether the State's conduct constituted a material and substantial breach of the plea agreement, however, is a question of law that we review independently.  *Id.*  Similarly, when reviewing a defendant's claim that his or her trial attorney was constitutionally ineffective, we uphold the circuit court's findings of fact unless they are clearly erroneous, but we independently review whether the defendant's proof is sufficient to meet the legal standard for ineffective assistance of counsel.  *State v. Nielsen*, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325.

**I.  Material and substantial breach of the plea agreement**

¶19     "A criminal defendant has a constitutional right to the enforcement of a negotiated plea agreement."  *Howard*, 246 Wis. 2d 475, ¶13.  The State's failure to present a negotiated sentencing recommendation to the circuit court constitutes a breach of the plea agreement.  *Williams*, 249 Wis. 2d 492, ¶38.  A defendant is not

entitled to relief, however, where the State's breach of the plea agreement was merely technical. *Id.* Instead, to obtain relief, the defendant must show that the State's breach was material and substantial. *Id.*

¶20 A breach of a plea agreement is material and substantial when it "violates the terms of the agreement and deprives the defendant of a material and substantial benefit for which he or she bargained." *State v. Bowers*, 2005 WI App 72, ¶9, 280 Wis. 2d 534, 696 N.W.2d 255. Wisconsin courts have made it clear that "even an oblique variance [from the terms of a plea agreement] will entitle the defendant to a remedy if it 'taints' the sentencing hearing by implying to the court that the defendant deserves more punishment than was bargained for." *Id.* (citation omitted). Consequently, the State may not "render less than a neutral recitation of the terms of the plea agreement," may not "covertly convey to the [circuit] court that a more severe sentence is warranted than that recommended," and may not "cast doubt on or distance itself from its own sentence recommendation." *Williams*, 249 Wis. 2d 492, ¶¶42, 50 (citations omitted). When the State commits a material and substantial breach of a plea agreement, the defendant is entitled either to plea withdrawal or to resentencing before a different judge. *See id.*, ¶38; *see also Howard*, 246 Wis. 2d 475, ¶¶36-37.

¶21 In this case, the plea agreement clearly and unambiguously required the State to recommend a sentence comprised of no more than ten years' initial confinement and ten years' extended supervision. However, despite the plea agreement's clear and unambiguous terms, the State twice requested a sentence during LaPean's sentencing hearing that exceeded its agreed-upon recommendation. It is undisputed that, by doing so, the State breached the plea agreement.

9

¶22   The State's agreement to cap its sentencing recommendation at ten years' initial confinement and ten years' extended supervision was a material and substantial term of the plea agreement. *See State v. Smith*, 207 Wis. 2d 258, 272, 558 N.W.2d 379 (1997); *see also Howard*, 246 Wis. 2d 475, ¶18 ("Undoubtedly, one of the most crucial issues in a plea agreement is the recommendation concerning the length of time to be served."). Nevertheless, the State argues that it did not materially and substantially breach the plea agreement by twice recommending sentences that exceeded the agreed-upon length because it "promptly, neutrally, and matter-of-factly corrected its misstatement when it realized its mistake." The State relies on *State v. Knox*, 213 Wis. 2d 318, 570 N.W.2d 599 (Ct. App. 1997), and *Bowers* in support of its argument.

¶23   In *Knox*, the prosecutor misstated the agreed-upon sentence recommendation by asking for a consecutive sentence instead of a concurrent sentence. *Knox*, 213 Wis. 2d at 319. After the prosecutor did so, defense counsel "immediately requested a recess to confer with the prosecutor," and when the hearing reconvened, "the prosecutor advised the court that there had apparently been a miscommunication regarding the agreement, and that she wished to make a new record regarding the State's recommendation." *Id.* at 320-21. The prosecutor then recommended a concurrent sentence. *Id.* at 321.

¶24   On appeal, we rejected Knox's argument that the State had materially and substantially breached the plea agreement. *Id.* at 322. We observed that the prosecutor's misstatement "was not intended to affect the substance of the agreement by sending a veiled message to the sentencing court that greater punishment than provided for in the plea agreement was warranted." *Id.* We further noted that the prosecutor's "deviation from the original terms [of the plea agreement] drew a prompt objection and was shown to be the result of a mistake

that was quickly acknowledged and rectified." *Id.* at 322-23. Finally, we observed that the prosecutor's "earnest manner in advocating the corrected proposed disposition, commented upon by the trial court, further circumstantially belie[d] an implication of improper motive." *Id.* at 323. In summary, we stated "the unintentional misstatement of the plea agreement, promptly rectified through the efforts of both counsel, did not violate Knox's due process right to have the full benefit of the plea bargain upon which he relied." *Id.*

¶25 In *Bowers*, the State mistakenly recommended a sentence of two and one-half years' initial confinement and two and one-half years' extended supervision, instead of the agreed-upon two years' initial confinement and three years' extended supervision. *Bowers*, 280 Wis. 2d 534, ¶¶2-3. After the State concluded its sentencing remarks, defense counsel pointed out the State's mistake, and the State "immediately amended its recommendation to 'two years in and three years out.'" *Id.*, ¶3.

¶26 On appeal, Bowers argued that the State had materially and substantially breached the plea agreement and that its belated recitation of the correct agreement was "too little, too late." *Id.*, ¶10. We rejected Bowers' argument, likening his case to *Knox*. We stated *Knox* teaches "that it is sufficient for the State to promptly acknowledge the mistake of fact and to rectify the error without impairing the integrity of the sentencing process." *Bowers*, 280 Wis. 2d 534, ¶12. We further observed that the State is not required to "correct a misstated sentence recommendation forcefully or enthusiastically." *Id.* We reasoned that, in Bowers' case,

> when the mistake was brought to its attention, the State promptly and matter-of-factly corrected its recommendation to the agreed upon bifurcated sentence and, in its sentencing remarks, the trial court recognized that the State was

11

> recommending "two years" of initial incarceration as part of the plea agreement. The perceived breach was not an attempt to qualify or undercut the substance of the plea agreement; rather, it was simply an inadvertent misstatement that was acknowledged and rectified shortly thereafter.

*Id.*, ¶13.

¶27 *Knox* and *Bowers* are distinguishable from this case in several important respects. First, unlike in those cases, the prosecutor here requested a sentence that exceeded the agreed-upon recommendation not once, but two times. Moreover, the prosecutor did not simply recommend a twenty-four-year sentence rather than the twenty-year sentence contemplated by the plea agreement; instead, she also strongly argued that a twenty-four-year sentence was warranted.

¶28 To explain, the record shows that immediately before making her initial sentence recommendation, the prosecutor argued that LaPean was likely to reoffend because he had failed to take responsibility for his actions. The prosecutor then stated, "The gravity of offense is high. The need to not unduly depreciate what happened here I think warrants a high prison time. The state recommends to this court 24 years fashioned as 12 years initial confinement." This argument specifically conveyed to the circuit court the State's belief that a twenty-four-year sentence—including twelve years' initial confinement—was necessary given the gravity of LaPean's crime and his failure to accept responsibility.

¶29 Defense counsel then objected, stating that the plea agreement "capped the State's recommendation at 10 years." Immediately thereafter, the prosecutor again breached the plea agreement by once more recommending a twenty-four-year sentence, this time comprised of ten years' initial confinement and fourteen years' extended supervision. And, once again, the prosecutor specifically argued that amount of time was necessary, stating: "And I think that the court needs

to sentence Desmond LaPean to that high amount because to do so [sic] *anything less* would unduly depreciate the seriousness of the crime, the gravity of the offense, and need to protect the public." (Emphasis added.)

¶30 Thus, in this case, unlike in ***Knox*** and ***Bowers***, the State not only requested a longer sentence than it had agreed to recommend, but it did so twice, and it specifically argued in both instances that the longer sentence was warranted given the gravity of LaPean's crime and the need to protect the public. The State's breaches of the plea agreement here were not merely "momentary" misstatements. *C.f.* ***Knox***, 213 Wis. 2d at 323. Instead, the State's entire sentencing argument was crafted to persuade the circuit court of the necessity of a twenty-four-year sentence.[4]

¶31 Moreover, unlike the prosecutors' misstatements in ***Knox*** and ***Bowers***, the prosecutor's errors here were not promptly corrected. *See **Knox***, 213 Wis. 2d at 323; ***Bowers***, 280 Wis. 2d 534, ¶13. Although defense counsel objected when the prosecutor initially breached the plea agreement by recommending a twenty-four-year sentence that included twelve years' initial confinement, immediately thereafter, the prosecutor breached the plea agreement again by recommending a twenty-four-year sentence comprised of ten years' initial confinement and fourteen years' extended supervision. Defense counsel did not object to the State's second breach, and the prosecutor did not correct her error until defense counsel had finished his sentencing argument and LaPean had begun his allocution. Thus, the circuit court was left with the impression that the State had

---

[4] In addition, we observe that the prosecutor took the unusual step of having the victim's mother speak in the middle of her sentencing argument. During her remarks, the victim's mother expressly requested that the circuit court impose "the maximum" sentence. Furthermore, both before and after the victim's mother requested the maximum sentence, the prosecutor reminded the court that it was sentencing LaPean for a Class B felony that carries a maximum penalty of sixty years' imprisonment. These remarks, too, would have conveyed to the court that the State believed a sentence of at least twenty-four years was warranted.

13

recommended a twenty-four-year sentence throughout the entirety of the defense's sentencing argument.

¶32 In addition, unlike the prosecutors in *Knox* and *Bowers*, the prosecutor in this case did not ask to make a new record after realizing that she had recommended a sentence in excess of that required by the plea agreement, nor was her correction made "earnest[ly]" or "matter-of-factly." *See Knox*, 213 Wis. 2d at 320-21, 323; *Bowers*, 280 Wis. 2d 534, ¶13. Instead, after realizing that she had misstated the agreed-upon sentence recommendation a second time, the prosecutor requested a side bar, and when the proceedings resumed on the record, she stated, "Judge, *due to the plea agreement that we had entered into*, the state does agree to cap its recommendation at 20 years fashioned as 10 years initial confinement and 10 years extended supervision. I apologize to the court that I misstated our agreement." (Emphasis added.)

¶33 After informing the circuit court of the correct sentence recommendation, the prosecutor did not engage in any other discussion about that recommendation. She did not ask the court to disregard her earlier argument or otherwise explain why the court should ignore her earlier recommendation, nor did she assert that she no longer believed a twenty-four-year sentence was necessary. Instead, the prosecutor qualified her correction by noting that the State was capping its sentence recommendation at twenty years "due to the plea agreement." That qualification suggested that the prosecutor was only recommending a twenty-year sentence because the plea agreement required her to do so, and that she did not actually believe a twenty-year sentence was appropriate. Although the State need not correct a misstated sentence recommendation "forcefully or enthusiastically," *see Bowers*, 280 Wis. 2d 534, ¶12, the State may not make the correction in such a manner that all but tells the court it is only doing so because of its obligation under

the plea agreement, *see State v. Liukonen*, 2004 WI App 157, ¶16, 276 Wis. 2d 64, 686 N.W.2d 689.

¶34    For the foregoing reasons, we reject the State's argument that this case is controlled by *Knox* and *Bowers*. We instead agree with LaPean that, as in *Williams*, the State's corrected sentence recommendation was "too little, too late." *See Williams*, 249 Wis. 2d 492, ¶52.

¶35    In *Williams*, the parties entered into a plea agreement that required the State to "recommend a sentence of three years' probation with 60 days in the county jail." *Id.*, ¶24. A PSI was then prepared, which recommended "a medium term of imprisonment." *Id.*, ¶25. At sentencing, the prosecutor made a number of comments regarding the PSI and conversations the prosecutor had with the defendant's ex-wife, which prompted an objection from the defense. *Id.*, ¶¶26-27. Specifically, defense counsel "argued that the State was undercutting its sentencing recommendation by relaying information that did not reflect the State's position and that the State was covertly changing its sentencing recommendation." *Id.*, ¶27. The prosecutor responded that she "was not changing her recommendation and that she was only relaying information from the author of the [PSI]." *Id.*, ¶29.

¶36    On appeal, our supreme court held that despite the prosecutor's assertion that she was recommending the agreed-upon sentence, the State had "substantially and materially breached the plea agreement" because its comments during the sentencing hearing "undercut the essence" of the agreement. *Id.*, ¶46. The court observed that the prosecutor's recitation of the plea agreement was "less than neutral" and "implied that had the State known more about the defendant, it would not have entered into the plea agreement." *Id.*, ¶47. Critically, the State "did not merely recite the unfavorable facts about the defendant to inform the circuit

court fully." *Id.*, ¶50. Instead, "the State covertly implied to the sentencing court that the additional information available from the [PSI] and from a conversation with the defendant's ex-wife raised doubts regarding the wisdom of the terms of the plea agreement." *Id.* Under these circumstances, the prosecutor's subsequent "affirmation of the plea agreement was not adequate to overcome the prosecutor's covert message to the circuit court that a more severe sentence was warranted than that which had been recommended." *Id.*, ¶51. In other words, the prosecutor's "comments affirming the plea agreement were too little, too late." *Id.*, ¶52.

¶37     Here, as in *Williams*, the prosecutor's comments conveyed to the circuit court that the State believed the court should impose a sentence longer than that which the State had agreed to recommend. Again, the State twice told the court that it was recommending a twenty-four-year sentence. In addition, the State expressly argued that a twenty-four-year sentence was necessary, given the gravity of LaPean's crime and the need to protect the public. Although the State ultimately corrected itself and recommended the agreed-upon sentence, as noted above, it did not ask to make a new record in support of that recommendation, nor did it ask the court to disregard its earlier argument or explain why the court should ignore its prior recommendation.

¶38     On these facts, we agree with LaPean that, as in *Williams*, the State's corrected recommendation was "too little, too late." *See id.* On the whole, the State's sentencing argument "depriv[ed] [LaPean] of the benefit of his bargain and render[ed] the sentencing proceeding fundamentally unfair." *Id.*, ¶58.

¶39     In arguing to the contrary, the State contends that its breaches of the plea agreement were not material and substantial because the circuit court "was unquestionably aware" of the sentence recommendation that the plea agreement

required the State to make. We disagree. LaPean's sentencing hearing took place approximately five months after he entered his plea. During the sentencing hearing, after the State initially misstated its sentence recommendation and defense counsel objected, the court stated it did not "know either way" what sentence the plea agreement required the State to recommend. Moreover, unlike the circuit court in *Bowers*, the court here never mentioned or referenced the correct sentence recommendation when imposing LaPean's sentence. *See Bowers*, 280 Wis. 2d 534, ¶¶3, 13.

¶40    The State also attempts to downplay its breaches of the plea agreement by emphasizing that, after defense counsel objected to the State's initial breach, the prosecutor recommended the agreed-upon term of initial confinement and merely erred as to the amount of extended supervision contemplated by the plea agreement. In making this argument, however, the State ignores the fact that it agreed to cap its total sentence recommendation at twenty years' imprisonment. Instead of doing so, the State twice asked the court to impose a twenty-four-year sentence.

¶41    Moreover, the State's argument regarding the necessity of a twenty-four-year sentence was not limited to the amount of initial confinement. When making her initial sentence recommendation, the prosecutor stated: "The need to not unduly depreciate what happened here I think warrants *a high prison time*. The state recommends to this court 24 years." (Emphasis added.) In Wisconsin, a prison sentence includes both a term of initial confinement and a term of extended supervision. *See* WIS. STAT. § 973.01 (2017-18). Later on, the prosecutor stated, "I think that the court needs to sentence … LaPean *to that high amount* because to do so [sic] anything less would unduly depreciate the seriousness of the crime, the gravity of the offense, and need to protect the public." (Emphasis added.) The prosecutor's argument regarding the "high amount" of time warranted

by the gravity of LaPean's crime and the need to protect the public did not distinguish between initial confinement and extended supervision.

¶42    The State also suggests that its breaches of the plea agreement could not have been material and substantial because "nothing in [the circuit court's sentencing] remarks reflected a misunderstanding of the sentence the State was arguing." As noted above, however, there was also nothing in the court's sentencing remarks indicating that it understood the correct sentence recommendation. In any event, when assessing a defendant's claim for relief based on an alleged breach of the plea agreement, "it is irrelevant whether the [circuit] court was influenced by the State's alleged breach or chose to ignore the State's recommendation." *Bowers*, 280 Wis. 2d 534, ¶8. The State's breach of a plea agreement "is not rendered harmless because of judicial refusal to follow the recommendation or judicial awareness of the impropriety." *Id.* Our analysis therefore focuses on "whether the State breached the agreement and, if so, whether the breach was material and substantial, rather than whether the [circuit] court was influenced by the breach." *Id.*

¶43    Finally, the State appears to contend that its breaches of the plea agreement were not material and substantial because they were inadvertent and the prosecutor "simply had the wrong number in her head—24 years, not 20." The circuit court similarly asserted in its decision denying LaPean's postconviction motion that there was no basis to impute "[i]mproper motives" to the prosecutor. However, whether the prosecutor intended to breach the plea agreement is not dispositive. "That the prosecutor did not intend to breach the agreement or that a breach was inadvertent 'does not lessen its impact.'" *Williams*, 249 Wis. 2d 492, ¶52 (citation omitted). Regardless of the prosecutor's intent, the State's breaches deprived LaPean of the benefit of the bargain.

18

¶44     For all of the reasons set forth above, we conclude the State materially and substantially breached the plea agreement by twice recommending that the circuit court impose a twenty-four-year sentence, even though it had agreed to recommend a sentence of no greater than ten years' initial confinement and ten years' extended supervision.    Because the State materially and substantially breached the plea agreement, we now turn to LaPean's argument that his trial attorney was constitutionally ineffective by failing to object to the State's second breach and by failing to advise him that resentencing before a different judge was an available remedy.

## II.  Ineffective assistance of counsel

¶45     Criminal defendants in Wisconsin are guaranteed the right to counsel by both the state and federal constitutions.  *State v. Carter*, 2010 WI 40, ¶20, 324 Wis. 2d 640, 782 N.W.2d 695.   The right to counsel includes the right to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

¶46     To prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Id.* at 687.  To prove deficient performance, the defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance."  *Id.* at 690.  To demonstrate prejudice, the defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

¶47     Here, the State concedes that if it materially and substantially breached the plea agreement, then LaPean's trial attorney performed deficiently by failing to object.  In addition, the State does not respond to LaPean's argument that, if a material and substantial breach occurred, his trial attorney performed deficiently by failing to inform him that he could seek resentencing before a different judge as a remedy for that breach.  We therefore deem the State to have conceded that LaPean's trial attorney also performed deficiently in that respect.  *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

¶48     Citing *Smith*, LaPean argues that because the State materially and substantially breached the plea agreement, we must presume that he was prejudiced by his trial attorney's failure to object to the State's second breach.  In *Smith*, our supreme court held that the State's material and substantial breach of a plea agreement at sentencing "always results in prejudice to the defendant."  *See Smith*, 207 Wis. 2d at 281; *see also Howard*, 246 Wis. 2d 475, ¶¶25-26 (acknowledging *Smith*'s holding that "prejudice is presumed" where the State materially and substantially breaches a plea agreement).  The State asserts, however, that "the presumption of prejudice in *Smith* and its progeny [is no longer] viable in light of subsequent United States Supreme Court law"—specifically, *Puckett v. United States*, 556 U.S. 129 (2009).  LaPean disputes the State's assertion and argues that *Smith*'s presumption of prejudice remains good law.

¶49     We need not resolve the parties' dispute regarding the continued vitality of the presumption of prejudice set forth in *Smith*.  Instead, we assume without deciding that no presumption of prejudice applies with respect to LaPean's trial attorney's failure to object to the State's second breach of the plea agreement. Nevertheless, we conclude LaPean has established that he was prejudiced by his

20

attorney's deficient performance in failing to advise him that he could seek resentencing before a different judge as a remedy for the State's breaches.

¶50     As noted above, when the State materially and substantially breaches a plea agreement, there are two remedies available to the defendant: plea withdrawal or resentencing before a different judge. *See Williams*, 249 Wis. 2d 492, ¶38. At the *Machner* hearing in this case, LaPean's trial attorney testified he was unaware at the time of sentencing that resentencing was an available remedy for the State's breaches of the plea agreement, and he therefore advised LaPean that the only possible remedy was plea withdrawal. LaPean testified that if he had known he could have sought resentencing before a different judge, he would have done so "[b]ecause the plea was broken." LaPean's trial attorney confirmed that when he discussed the State's breach with LaPean during the sentencing hearing, LaPean "immediately and eagerly asked [him] whether that breach of the plea agreement would be grounds for a resentence hearing in front of a new [j]udge." Counsel further testified that, in his opinion, LaPean "absolutely was interested in having a different [j]udge resentence him."

¶51     On these facts, LaPean has established a "reasonable probability" that the outcome of his case would have been different but for his trial attorney's failure to inform him that resentencing was an available remedy for the State's breaches of the plea agreement. Specifically, the record demonstrates a reasonable probability that, had counsel advised LaPean that he could seek resentencing before a different judge, LaPean would have done so. Moreover, given that the State materially and substantially breached the plea agreement, LaPean would have been entitled to resentencing.

¶52 LaPean has therefore shown that he was prejudiced by his trial attorney's deficient performance in failing to advise him that he could seek resentencing as a remedy for the State's breaches of the plea agreement. As such, LaPean has established that his trial attorney was constitutionally ineffective in that regard. Accordingly, we reverse LaPean's judgment of conviction and the order denying postconviction relief, and we remand for LaPean to be resentenced by a different judge.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

Not recommended for publication in the official reports.